**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **LA'SHADION SHEMWELL, in** | § | |
| **his official capacity as a city council** | § | |
| **member, and in his individual** | § | **CIVIL ACTION COMPLAINT** |
| **capacity as a voter in District 1** | § | |
| | § | |
| **And** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **FLORINE HENRY** | § | |
| | § | **JURY DEMAND** |
| **And** | § | |
| | § | |
| **DEBRA FULLER** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF MCKINNEY, TEXAS** | § | |
| | § | |
| *Defendant*. | § | |

---

### PLAINTIFFS' ORIGINAL COMPLAINT

---

### INTRODUCTION

1.      This is an action brought by the Plaintiffs pursuant to the Fourteenth and Fifteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. This case challenges the City of McKinney's racially motivated efforts to fix the outcome of a recall election that will have the effect of denying Black and Latino voters in McKinney City Council District 1 an equal opportunity to participate in the political process and to elect or recall the candidate of their choice.

2.      White city officials pushed forward changes to the McKinney city charter guaranteeing that Councilman Shemwell's recall election would take place city wide – even though he was elected from the city's only district with a majority-minority voting age population.

3.      Councilman La'Shadion Shemwell was elected to McKinney's District 1 in 2017, the City of McKinney's only majority-minority voting age population district. He is the second Black elected official in the city's history. No minority candidate has ever been elected to a citywide seat or to any of the city's other single-member districts due to racially polarized voting patterns in municipal elections.

4.      City officials have actively supported a recall effort against Councilman Shemwell, which began in 2019. Councilman Shemwell's recall election is the first and only recall effort ever launched within the City of McKinney.

5.      In support of these efforts, city officials amended the city charter to allow proponents of the recall to collect signatures citywide instead of only in District 1. Petitioners who collected the signatures for the petition use racial appeals and other repugnant tactics to encourage residents of McKinney to recall the Councilman, including using the Councilman's mugshot to indicate that he had a criminal history.

6.      Similar racist tactics were used in McKinney in 2017 when Shemwell first ran for office, which included campaigning by his opponents with images of Shemwell's mugshot side by side with images of his opponent, a white male resident of McKinney, smiling with his wife and baby.



7.      City officials also pushed forward a charter amendment, which expands the electorate of Councilman Shemwell's recall election to include the entire city, which is predominantly white. They pushed the amendment forward because they know that, due to racially polarized voting patterns in McKinney, it is virtually impossible for Councilman Shemwell to win in a citywide election. The Charter Amendment was therefore designed to prevent Black and Latino voters in District 1 from having an equal opportunity to elect and remove a candidate of their choice.

8.      Voting patterns within District 1 and the City of McKinney are racially polarized. These polarized voting patterns are correlated with the two major political parties present within the city. The Black and Latino voters within District 1 and in the city are politically cohesive in support of their candidates of choice, who are overwhelmingly opposed by white voters.

9.      The amendment to Chapter 18, Section 146 of the City of McKinney Charter was enacted with a discriminatory purpose in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act because racial concerns

motivated, at least in part, the decision to clarify that recall elections would be held citywide, rather than district wide.

10.      Although the recall election was originally scheduled to take place during the May 2020 election cycle, city officials purposefully postponed the recall election to November 2020 for two reasons: (1) the Mayor and City Council would be permitted to appoint a replacement to Councilman Shemwell's seat because city ordinance allows them this power if the remainder of the recalled official's term is less than one year; and (2) the November 2020 election would have much higher voter participation within McKinney, which would allow predominantly white voters within the city to dilute the voting strength of Black and Latino voters.

11.      Mayor George Fuller indicated that he would appoint Councilman Shemwell's replacement if the recall was successful, rather than allowing for a special election to fill the seat had the recall took place in May 2020 as originally intended.

12.      Conducting the recall election citywide also dilutes the voting strength of Black and Latino voters in District 1, including Councilman Shemwell himself, as well as the other Plaintiffs, and therefore denies them an equal opportunity to elect and recall their candidate of choice.

## PARTIES

13.      Plaintiff, the Honorable La'Shadion Shemwell, is a duly elected member of the McKinney City Council and resides in Collin County, Texas. Plaintiff is the youngest member of the McKinney City Council and the only Black council member.  He petitions the court as a Council Member, as well as an individual voter in District 1 of McKinney, Texas.  Plaintiff is a barber by trade, but became interested in running for political office after a series of racial incidents involving the City of McKinney and Black and Latino residents.  Plaintiff is well

known throughout District 1 and became concerned that Black and Latino residents were not being listened to by the all-white city council.  Plaintiff ran for office in District 1 to challenge the status quo, the lack of transparency and accountability by city officials, and to be a voice of support for residents in District 1. Plaintiff Shemwell brings this action in his official capacity as the duly elected member of the McKinney City Council from District 1 and in his individual capacity as a voter in District 1.  Due to the passage of the charter amendment, which was motivated by the intent, at least in part, to dilute the voting strength of Black and Latino voters in District 1, Plaintiff Shemwell does not have an equal opportunity to elect his candidate of choice – himself – in the November 2020 recall election.

14.     Plaintiff Florine Henry is an African-American resident and registered voter of McKinney.  Plaintiff Henry resides in McKinney City Council District 1.  Due to the passage of the charter amendment, which was motivated by the intent, at least in part, to dilute the voting strength of Black and Latino voters in District 1, Plaintiff Henry does not have an equal opportunity to elect her candidate of choice in the November 2020 recall election.

15.     Plaintiff, Debra Fuller is a Latina resident and registered voter of McKinney.  Plaintiff Fuller resides in McKinney City Council District 1.  Due to the passage of the charter amendment, which was motivated by the intent, at least in part, to dilute the voting strength of Black and Latino voters in District 1, Plaintiff Fuller does not have an equal opportunity to elect her candidate of choice in the November 2020 recall election.

16.     Defendant, the City of McKinney, Texas is a municipal corporation within the State of Texas.

**JURISDICTION AND VENUE**

17.     Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331, 1343, 1357 and pursuant to 52 U.S.C. § 10301. Plaintiff's action for injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.

18.     Venue is appropriate with this Court because the acts giving rise to this action occurred in this District in Collin County, Texas, and Defendant is subject to personal jurisdiction in Texas.

## FACTUAL BACKGROUND

19.     Councilman Shemwell was elected to the McKinney City Council as the District 1 councilmember in 2017 to serve a four-year term that would expire in May of 2021. Shemwell became only the second African American ever elected to the McKinney City Council and the first African American to serve on the city council in over two decades.

20.     Shemwell won his election to the District 1 city council seat in a four-way race and runoff while successfully garnering 58.6% of the vote in his district.

## Demographics in the City of McKinney

21.     According to the United States Census Bureau for the last available census in 2010, the City of McKinney has a total population of approximately 131,117 and a voting age population of approximately 89,211.

22.     The City of McKinney is predominantly white, with 77.21% of the city population classified as "White alone," 10.82% classified as "Black or African American alone," 4.19% classified as "Asian alone," 7.77% classified as "Some Other Race alone," and 18.61% classified as "Hispanic or Latino."

23.     The 2010 census indicates that the 77.21% of the population classified as "White alone" is approximately 98,090 people.

24.     The 2010 census indicates that the 10.82% of the population classified as "Black or African American alone" is approximately 13,751 people.

25.     The 2010 census indicates that the 4.19% of the population classified as "Asian alone" is approximately 5,325 people.

26.     The 2010 census indicates that the 7.77% of the population classified as "Some Other Race alone" is approximately 9,876 people.

27.     The 2010 census indicates that the 18.61% of the population classified as "Hispanic or Latino" is approximately 24,406 people.

|                      | Total Pop. | % of Total Pop. |
|----------------------|------------|-----------------|
| White alone          | 98,090     | 77.21%          |
| Black alone          | 13,751     | 10.82%          |
| Asian alone          | 5,325      | 4.19%           |
| Hispanic alone       | 24,406     | 18.61%          |
| Some Other Race alone | 9,876     | 7.77%           |

28.     District 1 is a majority-minority district in terms of its total population and voting age population.  District 1 is located on the east side of McKinney and contains the highest number of minority voters within the City of McKinney.

29.     The City of McKinney still remains relatively segregated, with most minority residents living in the east side of the city and located within the boundaries of District 1.

30.     According to demographic estimates provided by the City of McKinney, District 1 is the least populous district with a total of 41,011 people residing within the district.

31.

PLAINTIFFS' ORIGINAL COMPLAINT                                                    Page 7

| 2020 Race & Ethnicity | District 1 | District 2 | District 3 | District 4 |
|---|---|---|---|---|
| White (%) | 38.3% | 58.9% | 60.7% | 64.0% |
| Hispanic (%) | 38.3% | 11.3% | 17.4% | 12.6% |
| Black (%) | 17.3% | 13.6% | 12.6% | 11.3% |
| Asian (%) | 3.0% | 12.7% | 5.8% | 8.4% |
| Other (%) | 3.0% | 3.4% | 3.5% | 3.6% |

32.     Median household income in District 1 is also substantially lower than all other districts that are predominantly white.

| 2020 Income | District 1 | District 2 | District 3 | District 4 |
|---|---|---|---|---|
| Median Household Income | $57,489 | $100,240 | $92,668 | $115,934 |

33.     District 1 residents have lower educational attainment percentages compared to all other district that are predominantly white.

| Educ. Attainment | District 1 | District 2 | District 3 | District 4 |
|---|---|---|---|---|
| Population Age 25+: Graduate/ Prof. Degree (%) | 7.6% | 19.1% | 14.4% | 20.9% |
| Age 25+: Any College Degree (%) | 31.1% | 65.6% | 57.7% | 69.0% |

**City Officials' Treatment and Actions Towards Plaintiff**

34.     Since taking office in 2017, Shemwell has been a vocal critic of the City's inaction on issues of race, social justice and policing. Shemwell's activism on these issues has caused friction between Shemwell, the mayor and other council members, all of whom are white.

35.     In May 2018, Shemwell was arrested for failure to sign a traffic ticket after he questioned why the McKinney police officer had pulled him over. Shemwell stated publicly that the reason he was pulled over and subsequently arrested was due to his race and that this was an incident of racial profiling. Councilman Shemwell has been very vocal about making racial profiling-related issues in McKinney an element of his platform.

36.     Mayor Fuller denied that the McKinney officer had racially profiled Shemwell and demanded that Shemwell issue a retraction of his public comments related to the racial profiling incident. When Shemwell refused to retract his comments, the Mayor and City Council began to publicly confront Shemwell anytime he attempted to highlight cronyism between city officials and private corporations and individuals.

37.     In October of 2019, after the death of Atatiana Jefferson by Fort Worth Police Officer Aaron Dean, Councilman Shemwell issued a "Black State of Emergency." The proclamation emphasized that Black residents in Texas were being killed by police officers at alarming numbers. Mayor Fuller refused to have the proclamation read during the regularly schedule City Council meeting and told local media that Shemwell had to decide "Does he want to be an activist or a councilmember?"

38.     In December 2019, the City Council publicly discussed making recall elections easier for voters to participate in and remove elected officials.  Councilman Shemwell was the target of these proposed changes due to his statements on social justice issues and his recent proclamation on a "Black State of Emergency."

39.     Knowing that it would be difficult to recall Shemwell in District 1, given his popularity in the district, the City's intent was to allow for Shemwell's recall to take place city-wide and thus allow voters who were out of Shemwell's district to suddenly be capable of recalling him.

## Charter Amendment

40.     The City amended its city charter in May 2019 pursuant to a ballot initiative regarding recall elections for elected officials. Both the previous charter and the new charter require a petition drive for signatures to be collected and then approval by the city council to place the recall on the ballot and subsequently to be voted on by residents of McKinney.

41.     The recall petition was initiated by voters in McKinney, but served as the de facto arm of the Mayor and City Council of McKinney.

42.     Mayor George Fuller expressed his support for the recall both in public and in private. Mayor Fuller was actively engaged in recruiting volunteers to collect petition signatures and overseeing the recall process.

43.     Petition signatures were obtained through a variety of methods, including door to door visits by individuals paid to collect signatures. These collectors were instructed to carry a petition form as they went door to door and explain to voters why Plaintiff should be recalled, as well as showing voters a mugshot of Plaintiff for emphasis.



44.     Collectors were further instructed that because they already had a list of registered voters in McKinney along with their personal information, the collectors could forge the signatures instead of obtaining the signatures from the voters as required by law. As a result, many signatures were fraudulently obtained without the knowledge of voters in McKinney whose names appeared as signatories on the recall petition.

45.     After having obtained the requisite number of signatures, the recall petition was submitted to the City of McKinney for review. The City approved the signatures without verifying the authenticity of the signatures and forwarded the measure to the City Council.

46.     In May of 2019, the City of McKinney, pursuant to the recall petition, formulated the following amendment language and placed it on the ballot to be voted on by the citizens of McKinney:

*Proposition F: Shall Section 145 of the City Charter be amended to provide for a reduction in the required petition signatures needed to initiate a recall election?*

- *Proposed language: "Sec. 145. - Recall petitions*

  *The recall petition to be effective must be returned and filed with the City Secretary within forty-five (45) days after the filing of the affidavit required for initiative and referendum petitions, and it must be signed by qualified voters residing in any district, irrespective of the seat subject of the recall petition, of the City equal in number to at least thirty (30) percent of the total number of votes cast at the last regular municipal election; provided, however, that the petition shall contain the signatures of at least one thousand (1,000) of the qualified voters of the City and shall conform to the provisions of initiative and referendum petitions. No petition papers shall be accepted as part of petition unless it bears the signature of the City Secretary as required in initiative and referendum petitions."*

**Proposition G:** *Shall Section 146 of the City Charter be amended to clarify that recall elections are city wide?*

- *Proposed language: "Sec. 146. - Recall election*

  *The City Secretary shall at once examine the recall petition and, if the City Secretary finds it sufficient and in compliance with the provisions of this Chapter of the Charter, the City Secretary shall within five (5) days or at the next regular City Council meeting, whichever is later, submit it to the City Council with its office's certificate to that effect and notify the officer sought to be recalled of such action.*

  ***If the officer whose removal is sought does not resign within five (5) days after such notice, the City Council shall thereupon order and fix a date for holding a citywide recall election according to State law.***

47.    Under the previous charter, signatures were needed from at least 25% of the total number of voters who cast ballots in the last municipal election, provided that the petition contain signatures of at least 15% of registered voters in McKinney.  With more than 103,130 registered voters in that last election (May 2017), petitioners would have been required to gather nearly 15,500 signatures to trigger a recall.

48.    Under the amended charter, the petition would require signatures from at least 30% of the number of voters who cast ballots in the last regular municipal election.  As more than 7,080

voters cast ballots in the May 2019 election, the petition needed at least 2,125 signatures to be valid, a much lower requirement than under the previous charter.

49.     The City further amended its charter by increasing the number of days petitioners would have to turn in a petition to the city secretary's office.  The new charter allows petitioners 45 days to turn in signatures while the previous charter gave residents only 30 days.

50.     Most significantly, the charter was amended to clarify that the recall election would be held city-wide, instead of district-wide, despite that single-member districts like District 1 would have their votes diluted by the rest of the city that originally did not have any right to vote for Councilman Shemwell.

51.     Over 3,000 signatures were obtained to recall Councilman Shemwell from across the City of McKinney.  The vast majority of these signatures were obtained from voters outside of District 1.

### City of McKinney Election History

52.     No Black or Latino candidate has ever been elected to a citywide position within the City of McKinney.

53.     Michael Jones, an African-American resident in McKinney, was a candidate for the McKinney City Council at-large seat in 2017. Due to the fact that this was an at-large seat that would allow the entire city to vote on its preferred candidate, Michael Jones lost and garnered only 18.01% of the vote.

54.     Plaintiff Shemwell is only the second Black candidate to have ever won an election to the McKinney City Council. The only other Black candidate to have done so was likewise elected from District 1 in McKinney.

55.     In 1977, Willie Wattley was the first Black councilman elected to the McKinney City Council. Wattley was elected in District 1 as a single member councilmember for the first time since the City adopted single member districts in addition to at-large seats. He was reelected several times and served as the District 1 representative until 1997.

56.     In 2002, Gilda Garza became the first Hispanic councilmember elected within the City of McKinney. Garza was elected in District 1 and served two full terms.

## CAUSE OF ACTION

## DISCRIMINATORY PURPOSE IN VIOLATION OF THE FOURTEENTH AND FIFTEENTH AMENDMENTS AND SECTION 2 OF THE VOTING RIGHTS ACT

### (52 U.S.C. § 10301 and 42 U.S.C. § 1983)

57.     Plaintiff incorporates by reference each and every allegation contained in each of the above paragraphs of this Complaint as if fully set forth herein.

58.     42 U.S.C. § 1983 authorizes suits for the deprivation of a right secured by the Constitution or the laws of the United States caused by a person acting under the color of state law.

59.     Section 1 of the Fourteenth Amendment to the United States Constitution provides that:

> "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

60.     Section 2 of the Voting Rights Act of 1965 also prohibits voting changes that were enacted with a discriminatory purpose.

61.     The City's at-large recall election scheme was adopted or is being maintained by the City for the purpose of diluting the strength of Black and Latino voters, including Plaintiffs, in violation of the Fourteen and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

62.     The Charter Amendment was adopted, at least in large part, for the purpose of disadvantaging Black and Latino voters, who make a majority of the population in District 1 whereas white voters who overwhelmingly comprise the rest of the city.

63.     From the outset, Defendant intended to reduce the voting strength of Black and Latino voters in the recall election and prevent them from having a meaningful say in the recall of their candidate of choice.

64.     There is no legitimate, non-racial explanation or justification for the changes to the city charter that would allow the recall of Plaintiff Shemwell, the District 1 councilman, to be voted on by the entire city.

65.     Several of the indicia of discriminatory purpose are present in this case. There is evidence of substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and the legislative and administrative history of the decision, including contemporaneous statements by decision makers. In particular, this conclusion is inescapable considering the following factors, among others: (1) Councilman Shemwell's activism on racial issues; (2) city officials' active and public support of Councilman Shemwell's recall in conjunction with their official work to push forward and approve the charter changes; and (3) officials' knowledge of the city's racially polarized voting patterns, the racial composition of District 1, and the city as a whole. Chapter 18, Section 146 of the City of McKinney Charter was enacted with a racially discriminatory

purpose in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

66.     By engaging in the acts and omissions alleged herein, Defendants acted and continue to act under color of law to deny the Plaintiffs rights guaranteed to them by the Fourteenth and Fifteenth Amendments to the U.S. Constitution and Section 2 of the Voting Rights Act, and will continue to violate those rights absent relief granted by this Court.

67.     Unless enjoined by this Court, Defendants will continue to violate the United States Constitution by conducting the recall election against Plaintiff Shemwell in the racially discriminatory and unconstitutional at-large method of election for the purpose of diluting the strength of Black and Latino voters.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court issue the following declaratory and injunctive relief:

A.     Issue declaratory relief declaring the McKinney City Charter Amendment to have been enacted, at least in part, with a discriminatory purpose in violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution and Section 2 of the Voting Rights Act;

B.     Enjoin Defendant from conducting the recall election during the November 2020 cycle while it considers this Complaint.

C.     Alternatively, limit the eligible voters in the recall election to just the voters of District 1.

D.      Award Plaintiffs their costs and reasonable attorney's fees incurred as a result of

         this litigation; and

E.      Award Plaintiff such other and further relief the Court deems fair and proper.

Respectfully submitted,

/s/ Blerim Elmazi
Blerim Elmazi, Esquire
State Bar No. 24118375
MERRITT LAW FIRM, LLC
1910 Pacific Ave Suite 8000
Dallas, TX. 75021
blerim@leemerrittesq.com
(Pro Hac Vice Petition forthcoming)

/s/ Stacy Lee Merritt
Stacy Lee Merritt, Esquire
MERRITT LAW FIRM, LLC
1910 Pacific Ave Suite 8000
Dallas, TX. 75021
lee@leemerrittesq.com

/s/ Shayan Elahi
Shayan Elahi, Esquire
LAW OFFICES OF SHAYAN ELAHI
13601 Preston Road Suite E770
Shayan@elahilawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2020, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

*/s/ Blerim Elmazi*
**Blerim Elmazi**
