# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **LA'SHADION SHEMWELL,** | § | |
| **in his official capacity as a city council** | § | |
| **member, and in his individual capacity as** | § | |
| **a voter in District 1, and FLORINE** | § | |
| **HENRY, and DEBRA FULLER,** | § | |
| | § | **Civil Action Complaint** |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:20-cv-00687-SDJ** |
| **v.** | § | |
| | § | **JURY DEMAND** |
| **CITY OF MCKINNEY, TEXAS,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND BRIEF IN SUPPORT

**Kent S. Hofmeister**
State Bar No. 09791700
khofmeister@bhlaw.net
**Robert F. Brown**
State Bar No. 03164725
rbrown@bhlaw.net
**BROWN & HOFMEISTER, L.L.P.**
740 East Campbell Road, Suite 800
Richardson, Texas 75081
(214) 747-6100 (Telephone)
(214) 747-6111 (Telecopier)

**William W. Krueger, III**
State Bar No. 11740530
wkrueger@kruegerlaw.org
**THE LAW OFFICE OF**
**WILLIAM W. KRUEGER III, PC**
2100 Alamo Road, Suite T
Richardson, Texas 75080
(214) 253-2600 (Telephone)
(214) 253-2626 (Telecopier)

*Attorneys for Defendant*
*City of McKinney, Texas*

October 5, 2020

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION AND OVERVIEW .......................................................1

II.     PROCEDURAL BACKGROUND................................................................3

III.    GROUNDS FOR MOTION .........................................................................4

IV.     PLAINTIFFS' ALLEGATIONS AS TO THE CITY.........................................5

V.      STANDARD OF REVIEW ..........................................................................8

VI.     ARGUMENT AND AUTHORITIES..............................................................9

        A.      Plaintiffs' cause of action under 42 U.S.C. § 1983
                fails to state a claim for relief .....................................................9

                1.      Municipal Liability Under § 1983 – "Moving Force" Causation ...............9

                2.      Applicability of State Law Under § 1983 ..................................11

                3.      McKinney's Home-Rule City Charter - Recall Petitions and
                        Recall Elections .........................................................11

                4.      Plaintiffs have failed to plead, and cannot plead, facts to show that
                        any action by the City was the moving force behind their alleged
                        injuries.......................................................................12

        B.      Section 2 of the Voting Rights Act does not apply to recall election cases...........14

        C.      Plaintiffs cannot plead or prove a claim for injunctive relief under
                the Voting Rights Act ...............................................................16

        D.      Plaintiffs should not be permitted to amend or replead their Complaint...............18

VII.    REQUEST FOR RELIEF .........................................................................19

CERTIFICATE OF SERVICE ......................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Tech. Bldg. Sols.* v. *City of Jackson, Miss.,* 817 F.3d 163 (5th Cir. 2016) ............ 10, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 9

*Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397 (1997) ............................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 8, 9

*Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185 (5th Cir.1975) ........................................... 18

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995) ...................................................... 8

*Chisom v. Roemer*, 501 U.S. 391 (1991) ..................................................................................... 15

*Citibank, N.A. v. Citytrust,* 756 F.2d 273 (2d Cir.1985) .............................................................. 18

*City of St. Louis v. Praprotnik,* 482 U.S. 112 (1988) .................................................................. 10

*Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808 (5th Cir. 2010) ........................................... 14

*Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988) ..................................................................... 15

*Doe v Edgewood Indep. Sch. Dist.*, 964 F.3d 351 (5th Cir. 2020) ............................................... 10

*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992) ........................................................ 10

*Garrett v. Comcast Communications, Inc.,* 3:04-CV-0693-P, 2004 WL 2624679 (N.D. Tex. Nov. 17, 2004) ............................................................................................................... 2

*Gonannies, Inc. v. Goaupair, Inc.,* 464 F.Supp. 603 (N.D. Tex. 2006) ................................ 17, 18

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir. 1988) .............................................................. 8

*Guidry v. American Public Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) ........................................ 8

*Hand v. Gary,* 838 F.2d 1420 (5th Cir. 1988) ............................................................................. 14

*Hicks-Fields v. Harris Cty.*, 860 F.3d 803 (5th Cir. 2017) ............................................... 9, 10, 13

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) .............................................. 8

*In re Woodfill*, 470 S.W.3d 473 (Tex. 2015) ......................................................................... 12, 13

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ........................................................................ 16

*Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004) ............................................................................................................. 10

*Kitchen v. Dallas Cty.*, 759 F.3d 468 (5th Cir. 2014) ..................................................... 9

*Kjellvander v. Citicorp*, 156 F.R.D. 138 (S.D. Tex. 1994) ............................................. 8

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) .............. 8

*McBride v. City of Jasper,* 2011 WL 13249480 (E.D. Tex. Oct. 20, 2011) ... 12, 13, 14, 15, 16, 17

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .......................................... 9, 10, 11

*Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988) .......................................................... 15

*Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) ........................................................... 15

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) ..................................................... 11

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) ........................................ 10

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) .................................. 10, 11

*Shemwell v. City of McKinney*, Civil Action No. 4:20-cv-00043-SDJ ............................ 3

*Smith v. Winter*, 717 F.2d 191 (5th Cir.1983) ........................................................ 15, 16

*Tough Traveler, Ltd. v. Outbound Prod.,* 60 F.3d 964 (2d Cir.1995) ........................... 18

*United States v. Brown*, 561 F.3d 420 (5th Cir. 2009) ................................................... 15

*Valle v. City of Houston,* 613 F.3d 536 (5th Cir. 2010) .......................................... 10, 11

*Wireless Agents, L.L.C. v. T–Mobile USA, Inc.,* 2006 WL 1540587 (N.D. Tex. June 6, 2006) .................................................................................................................... 17

**Statutes**

2A Moore's Federal Practice ¶12.07 ............................................................................... 8

3 Wright & Miller, Federal Practice and Procedure: Civil 2d §1216 ............................... 8

42 U.S.C. § 1983 ...................................................... 2, 4, 5, 9, 10, 11, 12, 13, 14

52 U.S.C. § 1973 ..................................... 2, 4, 5, 7, 8, 9, 14, 15, 16, 18, 19

Fed.R.Civ.P. 8 ......................................................................................................... 8, 9

Fed.R.Civ.P. 12 ...................................................................................................... 1, 8

Tex. Loc. Gov't Code § 9.004 ............................................................................. 11, 13

Tex. Loc. Gov't Code § 9.005 ................................................................................. 11

U.S. Const. amend. XIV ...................................................................................... 2, 7, 8

U.S. Const. amend. XV.......................................................................................... 2, 7, 8

Welch & Hofmeister, *Praprotnik, Municipal Policy and Policymakers: The Supreme Court's Constriction of Municipal Liability*, 13 S. ILL. U.L.J. 857 (1989) ............................ 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LA'SHADION SHEMWELL, | § | |
| in his official capacity as a city council | § | |
| member, and in his individual capacity as | § | |
| a voter in District 1, and FLORINE | § | |
| HENRY, and DEBRA FULLER, | § | |
| | § | **Civil Action Complaint** |
| Plaintiffs, | § | |
| | § | **Civil Action No. 4:20-cv-00687-SDJ** |
| v. | § | |
| | § | **JURY DEMAND** |
| CITY OF MCKINNEY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6)
AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of McKinney, Texas ("Defendant" or "City"), pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, files this motion to dismiss Plaintiffs' Original Complaint

("Complaint") for failure to state a claim upon which relief can be granted.  In support thereof, the

City respectfully shows this Court the following:

## I.    INTRODUCTION AND OVERVIEW

This lawsuit is brought against the City by three individual Plaintiffs, (1) La'Shadion

Shemwell ("Shemwell"), the City of McKinney's sole African-American City Councilman, who

was elected in 2017 to represent District 1, an alleged majority-minority district and one of four

districts in the City, and who is currently serving a four-year term set to expire in May 2021; (2)

Florine Henry ("Henry"), an African-American woman who is a registered voter and who resides

in District 1; and (3) Debra Fuller ("Fuller"), a Latina woman who is a registered voter and who

resides in District 1. *See* Pls.' Compl., pp. 4-5, ¶¶ 13, 14, 15. Plaintiffs allege that the City has deprived them of their rights under the Fourteenth and Fifteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and § 2 of the Voting Rights Act, 52 U.S.C. § 1973 ("Voting Rights Act"). *See id*, pp. 15-16, ¶¶ 1, 61, 65-66. More specifically, Plaintiffs complain that the City's recall election process and related past charter amendments, as well as a citywide voting scheme to recall Shemwell, a sitting City Councilmember elected from single-member District 1, discriminate against Shemwell and Black and Latino voters by diluting the strength of their vote and Shemwell's ability to serve. *See* Pls.' Compl., *passim*.

In May 2019, a majority of the City's qualified voters, pursuant to a duly called charter amendment election, voted to amend Section 145, "Recall Petitions,"[1] and Section 146, "Recall Election,"[2] of the City Charter of the City of McKinney, Texas ("City Charter" or "Charter"). *See* Pls.' Compl., ECF Doc. No. 1, pp. 15-16, ¶¶ 46-50. In December 2019, a group of McKinney citizens submitted a petition to the City, seeking the recall and removal of Councilman Shemwell ("recall petition"). *See id.*, pp. 9-11, 13, ¶¶ 38, 40-41, 45, 51. The recall petition was certified by McKinney City Secretary Empress Drane ("Drane") on January 7, 2020,[3] and on January 21, 2020,

---

[1] Proposition F changed the number of signatures required on recall petitions from 15 percent of registered voters citywide (currently 103,000) to 30 percent of votes cast in the last regular city election (7,087 last May) and extended the time to collect signatures from 30 to 45 days. *See* Section IV (4), *infra*.

[2] Proposition G clarified that all recall elections are citywide. *See* Section IV (4), *infra*.

[3] *See* Official Minutes of the Regular City Council Meeting, McKinney City Council, January 7, 2020. https://storage.googleapis.com/vault01.swagit.com/mckinneytx/imported/mckinney_a0168c53-41e8-4e56-a0f2-ce21b029d44d.pdf

*See also* https://mckinneytx.new.swagit.com/videos/59485 at 2:17:33 (certification begins at 2:18:38).

The City asks the Court to take judicial notice of official City of McKinney and State of Texas documents, which are publicly available on the City's and the State of Texas's official web sites. The link to each such document identified herein is provided with the document description. *See Garrett v. Comcast Communications, Inc.*, 3:04-CV-0693-P, 2004 WL 2624679, at *2 (N.D. Tex. Nov. 17, 2004) (court may consider public records attached to motion to dismiss without conversion to motion for summary judgment).

**DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND BRIEF IN SUPPORT - Page 2**

the McKinney City Council ("City Council") approved a recall election ordinance, which set a special election date of May 2, 2020 for the City's qualified voters to determine whether Shemwell should be removed from or remain in office.[4]

Although the election was originally scheduled for May 2, 2020, Texas Governor Greg Abbott issued a proclamation on March 18, 2020, encouraging local governments to postpone all May elections to November 2020 in light of the breaking COVID-19 pandemic.[5] The City, like most cities around the state, heeded that advice and rescheduled the special recall election for November 3, 2020. *See* Pls.' Compl., ECF Doc. No. 1, pp. 5, 16, ¶ 14, Prayer for Relief.

Plaintiffs seek, among other things, declaratory and injunctive relief, and request that this Court enjoin the City from conducting next month's scheduled recall election. *Id.,* p. 16, Prayer for Relief.

## II.    PROCEDURAL BACKGROUND

This is the second of two lawsuits brought against the City this year in which Shemwell has been the sole or lead party plaintiff. The first suit, *Shemwell v. City of McKinney*, Civil Action No. 4:20-cv-00043-SDJ, filed in this Court on January 20, 2020, also sought injunctive and declaratory relief, and complained of the same 2019 charter amendments, passed and approved by the voters of the City of McKinney, which reduced the number of signatures required on recall petitions and which clarified that recall elections for any Council member are citywide ("2019 charter amendments"). The recall election was originally scheduled for May 2, 2020; however, on

---

[4] *See* Official Minutes of the Regular City Council Meeting, McKinney City Council, January 21, 2020. http://mckinney.legistar.com/View.ashx?M=M&ID=746012&GUID=20066055-9E5B-4EFF-903E-684396E2A689

[5] *See* Proclamation of Greg Abbott, Governor of the State of Texas, March 18, 2020 ("Governor's Proclamation"). https://gov.texas.gov/uploads/files/press/PROC_COVID-19_May_2_Election_Date_IMAGE_03-18-2020.pdf

March 13, 2020, Shemwell filed an Amended Notice of Voluntary Dismissal of Claims against the City, thereby bringing that litigation to a close.

Six months later to the day, September 13, 2020, Plaintiffs initiated the instant litigation against the City.

### III.    GROUNDS FOR MOTION

Plaintiffs have brought two federal claims against the City, one for the alleged violation of their constitutional rights under 42 U.S.C. § 1983 and the other for the alleged violation of § 2 of the Voting Rights Act. Plaintiffs, however, fail to state a claim upon which relief can be granted under either cause of action; therefore, their Complaint must be dismissed.

First, Plaintiffs have not sufficiently pled and cannot prove under § 1983 that the City approved or adopted any municipal policy that directly caused injury to them or others. The City Council was presented with a certified recall petition for Shemwell's removal, which required, under both state law and the City Charter, that the City submit the issue to the City's voters to decide whether removal was appropriate, or not. Similarly, the 2019 charter amendments that preceded the submission of the recall petition, and that provided for both a fewer number of signatures on such petitions and for all recall elections to be determined citywide, were the result of a special election and a determination by the City's voters, not the City. In short, there is no causal connection between Plaintiffs' alleged injuries and any action taken or official policy implemented by the City

Second, Plaintiffs' Complaint also fails to state a claim for relief under § 2 of the Voting Rights Act because the Act does not apply to recall elections. Three different circuit courts of appeals – the Ninth Circuit, the Tenth Circuit, and the Eleventh Circuit – have ruled that § 2 of the Act does not apply to voter-initiated petitions, and one federal district court in Texas, acting on a

case with a similar fact situation, held that the plaintiffs' claims failed because the issue in the Fifth Circuit is, at best, unsettled. Accordingly, Plaintiffs' claims against the City under the Voting Rights Act also must be dismissed.

## IV.     PLAINTIFFS' ALLEGATIONS AS TO THE CITY

Plaintiffs complain generally about the events and process surrounding local efforts to recall Councilman Shemwell, and they attempt to assign fault to the City for complying with what the law requires Texas municipalities to do when presented with citizen-initiated recall petitions. Pls.' Compl., ECF Doc. No. 1, *passim*. The City, however, does not step into the shoes of citizens who are collecting signatures for the petition or who are accused of repugnant misconduct, or of its individual "officials," identified or unidentified, who are alleged to have taken a position on the politics of the recall or to have some type of unsubstantiated bias against Shemwell. The focus instead, certainly for purposes of a § 1983 analysis, must be on what the Complaint alleges *the City* has done, by way of policy, practice, custom, or usage, that has directly violated the law and was the moving force behind any injury to Plaintiffs.

As to the City, Plaintiffs allege that:

1.      The City amended its city charter in May 2019 pursuant to a ballot initiative regarding recall elections for elected officials. Both the previous charter and the new charter require a petition drive for signatures to be collected and then approval by the city council to place the recall on the ballot and subsequently to be voted on by residents of McKinney.

Pls.' Compl., ECF Doc. No. 1, p. 10, ¶ 40.

2.      The recall petition was initiated by voters in McKinney, …

Pls.' Compl., ECF Doc. No. 1, p. 10, ¶ 41.

3.      After having obtained the requisite number of signatures, the recall petition was submitted to the [City] for review. The City approved the signatures

without verifying the authenticity of the signatures and forwarded the measure to the City Council.[6]

Pls.' Compl., ECF Doc. No. 1, p. 11, ¶ 45.

4.      In May of 2019, the [City], pursuant to the recall petition (sic), formulated the following amendment language and placed it on the ballot to be voted on by the citizens of McKinney:

Proposition F:  Shall Section 145 of the City Charter be amended to provide for a reduction in the required petition signatures needed to initiate a recall election?

Proposed language: "Sec. 145 - Recall petitions

The recall petition to be effective must be returned and filed with the City Secretary within forty-five (45) days after the filing of the affidavit required for initiative and referendum petitions, and it must be signed by qualified voters residing in any district, irrespective of the seat subject of the recall petition, of the City equal in number to at least thirty (30) percent of the total number of votes cast at the last regular municipal election; provided, however, that the petition shall contain the signatures of at least one thousand (1,000) of the qualified voters of the City and shall conform to the provisions of initiative and referendum petitions.  No petition papers shall be accepted as part of petition unless it bears the signature of the City Secretary as required in initiative and referendum petitions."

Proposition G:  Shall Section 146 of the City Charter be amended to clarify that recall elections are city wide?

Proposed language: "Sec. 146 – Recall election

The City Secretary shall at once examine the recall petition and, if the City Secretary finds it sufficient and in compliance with the provisions of this Chapter of the Charter, the City Secretary shall within five (5) days or at the next regular City Council meeting, whichever is later, submit it to the City Council with its office's certificate to that effect and notify the officer sought to be recalled of such action.

**If the officer whose removal is sought does not resign within five (5) days after such notice, the City Council shall thereupon order and fix a date for holding a citywide recall election according to State law.["]**

Pls.' Compl., ECF Doc. No. 1, pp. 11-12, ¶ 46 (emphasis in original (Complaint)).

---

[6] Plaintiffs do not complain that the recall petition was not certified by City Secretary Drane. *See* Pls.' Compl., ECF Doc. No. 1, *passim*.

     5.      Under the amended charter, the petition would require signatures from at least 30% of the number of voters who cast ballots in the last regular municipal election. As more than 7,080 voters cast ballots in the May 2019 election, the petition needed at least 2,125 signatures to be valid, a much lower requirement than under the previous charter.

Pls.' Compl., ECF Doc. No. 1, pp. 12-13, ¶ 48.

     6.      The City further amended its charter by increasing the number of days petitioners would have to turn in a petition to the city secretary's office. The new charter allows petitioners 45 days to turn in signatures while the previous charter gave residents only 30 days.

Pls.' Compl., ECF Doc. No. 1, p. 13, ¶ 49.

     7.      [T]he charter was amended to clarify that the recall election would be held city-wide, instead of district-wide, despite that single-member districts like District 1 would have their votes diluted by the rest of the city that originally did not have any right to vote for Councilman Shemwell.

Pls.' Compl., ECF Doc. No. 1, p. 13, ¶ 50.

     8.      The City's at-large recall election scheme was adopted or is being maintained by the City for the purpose of diluting the strength of Black and Latino voters, including Plaintiffs, in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

Pls.' Compl., ECF Doc. No. 1, p. 15, ¶ 61.

     9.      The Charter Amendment was adopted, at least in large part, for the purpose of disadvantaging Black and Latino voters, who make a majority of the population in District 1 whereas white voters who overwhelmingly comprise the rest of the city.

Pls.' Compl., ECF Doc. No. 1, p. 15, ¶ 62.

     10.     From the outset, [the City] intended to reduce the voting strength of Black and Latino voters in the recall election and prevent them from having a meaningful say in the recall of their candidate of choice.

Pls.' Compl., ECF Doc. No. 1, p. 15, ¶ 63.

     11.     There is no legitimate, non-racial explanation or justification for the changes to the city charter that would allow the recall of Plaintiff Shemwell, the District 1 councilman, to be voted on by the entire city.

Pls.' Compl., ECF Doc. No. 1, p. 15, ¶ 64.

> 12.     Chapter 18, Section 146 of the [City Charter] was enacted with a racially discriminatory purpose in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

Pls.' Compl., ECF Doc. No. 1, pp. 15-16, ¶ 65.

## V.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); however, the plaintiff, in turn, must plead "enough facts to state a claim to relief that is plausible on its face." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even under the liberal notice pleading standard of Fed.R.Civ.P. 8, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn" under a relevant legal theory. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 Wright & Miller, Federal Practice and Procedure: Civil 2d §1216 at 156-59). As a result, dismissal is proper if the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Id*. (quoting 2A Moore's Federal Practice ¶12.07 [2.-5] at 12-91). Further, when reviewing a complaint to determine whether it contains all the essential elements of a plaintiff's theory of recovery, "[t]he court is not required to 'conjure up unplead allegations or construe elaborately arcane scripts' to save [the] complaint." *Id*. (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)); *see also Kjellvander v. Citicorp*, 156 F.R.D. 138, 141 (S.D. Tex. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. Nor is a complaint sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557). In other words, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. (citing *Twombly*, 550 U.S. at 570). As will be shown herein, Plaintiffs' Complaint should be dismissed because Plaintiffs have failed to plead a plausible claim against the City under either 42 U.S.C. § 1983 or § 2 of the Voting Rights Act.

## VI.   ARGUMENT AND AUTHORITIES

**A.   Plaintiffs' cause of action under 42 U.S.C. § 1983 fails to state a claim for relief**

### 1.   Municipal Liability Under § 1983 – "Moving Force" Causation

A municipality may be liable under 42 U.S.C. § 1983[7] where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014). To establish that liability, "a

---

[7] 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields*, 860 F.3d at 808 (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also Advanced Tech. Bldg. Sols.* v. *City of Jackson, Miss.,* 817 F.3d 163, 165-66 (5th Cir. 2016) (municipal liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

A municipal policymaker is someone who possesses "the responsibility for making law or setting policy in any given area of a local government's business." *Valle v. City of Houston,* 613 F.3d 536, 542 (5th Cir. 2010) (citing *City of St. Louis v. Praprotnik,* 482 U.S. 112, 125 (1988)).[8] For a municipal action to constitute a moving force behind a constitutional injury, the complained of action must be "taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404 (1997)) (internal quotation marks omitted); *see also Doe v Edgewood Indep. Sch. Dist*., 964 F.3d 351, 365 (5th Cir. 2020) ("Moving force" causation is more than "but for" causation."); *Peterson,* 588 F.3d at 848 ("In other words, a plaintiff must show direct causation."); *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)) ("[t]his connection must be more than a mere 'but for' coupling between cause and effect"). To meet this heightened causation standard, a plaintiff

---

[8] For a general discussion of municipal policy and policymakers under § 1983 from *Monell* through *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), *see* Welch & Hofmeister, *Praprotnik, Municipal Policy and Policymakers: The Supreme Court's Constriction of Municipal Liability*, 13 S. ILL. U.L.J. 857, 887 (1989).

must adequately plead the required elements with a "high threshold of proof." *Piotrowski,* 237
F.3d at 580 (citing *Monell,* 436 U.S. at 694).

### 2.    Applicability of State Law Under § 1983

Whether a government official or entity possesses final policymaking authority for
purposes of municipal liability under § 1983 is a matter of state and local law. *Valle,* 613 F.3d at
542 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482 (1986)). Chapter 9, "Home-Rule
Municipality," of the Texas Local Government Code addresses the process for the adoption or
amendment of a municipality's home-rule charter. In Texas, the governing body of a municipality:

> on its own motion *may* submit a proposed charter amendment to the municipality's
> qualified voters for their approval at an election. The governing body *shall* submit
> a proposed charter amendment to the voters for their approval at an election if the
> submission is supported by a petition signed by a number of qualified voters of the
> municipality equal to at least five percent of the number of qualified voters of the
> municipality or 20,000, whichever is the smaller.

Tex. Loc. Gov't Code § 9.004(a) (emphasis added). A proposed home-rule charter amendment is
adopted if it is approved by a majority of the municipality's qualified voters; it becomes effective
when the municipality's governing body enters an order in the municipality's records declaring
that the charter amendment is adopted. Tex. Loc. Gov't Code § 9.005.

### 3.    McKinney's Home-Rule City Charter - Recall Petitions and Recall Elections

At the local level, and in this instance, the McKinney City Charter[9] sets out the process for
recall petitions and recall elections[10] and provides that, upon receipt of a certified, citizen-initiated

---

[9] *See*  https://library.municode.com/tx/mckinney/codes/code_of_ordinances?nodeId=PTICH

[10] Section 145, "Recall petitions," of the City Charter provides:

> The recall petition to be effective must be returned and filed with the City Secretary within forty-five (45)
> days after the filing of the affidavit required for initiative and referendum petitions, and it must be signed
> by qualified voters residing in any district, irrespective of the seat subject of the recall petition, of the City
> equal in number to at least thirty (30) percent of the total number of votes cast at the last regular municipal
> election; provided, however, that the petition shall contain the signatures of at least one thousand (1,000)
> of the qualified voters of the City and shall conform to the provisions of initiative and referendum petitions.

recall petition, and if the official subject to the recall effort has not resigned within five days' notice from the City Secretary, the City Council "*shall* thereupon order and fix a date for holding a citywide recall election according to State law." *See* City Charter, Section 146 (emphasis added).

### 4.    Plaintiffs have failed to plead, and cannot plead, facts to show that any action by the City was the moving force behind their alleged injuries

The City cannot be liable to Plaintiffs under § 1983 because Plaintiffs have failed to plead, and cannot plead or prove, any set of facts to establish that any action, decision, or policy of the City, or any state actor, was the moving force that directly caused their alleged injuries.

Texas courts have consistently held that charter language that requires a city council to call an election following receipt and certification of a citizen-initiated recall petition establishes a ministerial duty on the part of the city council to order a recall election. *See, e.g., In re Woodfill,* 470 S.W.3d 473, 479 (Tex. 2015) (court relied on home-rule charter language stating that upon receipt of certified recall petition city council "shall submit it to popular vote at the next city election"); *McBride v. City of Jasper,* 2011 WL 13249480, at *2 (E.D. Tex. Oct. 20, 2011) (court relied on home-rule charter language stating that upon receipt of certified recall petition "it shall become the duty of the city council to order an election and fix a date for holding such recall election.").

---

No petition papers shall be accepted as part of petition unless it bears the signature of the City Secretary as required in initiative and referendum petitions.

Section 146, "Recall election," of the City Charter provides:

The City Secretary shall at once examine the recall petition and, if the City Secretary finds it sufficient and in compliance with the provisions of this Chapter of the Charter, the City Secretary shall within five (5) days or at the next regular City Council meeting, whichever is later, submit it to the City Council with its office's certificate to that effect and notify the officer sought to be recalled of such action.

If the officer whose removal is sought does not resign within five (5) days after such notice, the City Council shall thereupon order and fix a date for holding a citywide recall election according to State law.

The McKinney City Charter provides that, upon receipt, the City Secretary must review the petition to ensure sufficiency and compliance with the Charter and then certify it for submission to the City Council. *See* City Charter, Sec. 146. If the officer subject to recall has not resigned within five days, the City Council then must order and fix a date for holding a citywide recall election according to State law. *Id.; see also* Tex. Loc. Gov't Code § 9.004(a).

That is precisely what has happened in this instance – City Secretary Drane reviewed and, on January 7, 2020, certified the recall petition submitted to the City at a regular, publicly held Council meeting. The Council then was required by state law and the City Charter, once Shemwell declined to resign his seat on the Council, to order and schedule a date for holding the city recall election, which it did. *See McBride*, 2011 WL 13249480, at *2; *In re Woodfill,* 470 S.W.3d at 479. The date of the election was May 2, 2020, but due to the COVID-19 pandemic and as authorized by the Governor's Proclamation, the election has been rescheduled to November 3, 2020.

Consistent with the Complaint, the recall petition process has never been a matter in which the City voluntarily inserted itself or acted with even a modicum of discretion; the process has always been and remains citizen-driven. And the result of the election – in which Shemwell may or may not be removed from the Council – rests firmly in the hands of the voters and not the City or the City Council. Therein lies the challenge for Plaintiffs to withstand a motion to dismiss on their § 1983 claim.

An independent, third-party action that supersedes or vitiates a governmental decisionmaker's action breaks the causal chain necessary to establish § 1983 liability because the decisionmaker that took the initial action can no longer be the "final authority" or the "moving force" behind any alleged constitutional deprivation. *See, e.g., Hicks-Fields*, 860 F.3d at 808; *Advanced Tech. Bldg. Sols.,* 817 F.3d at 165-66. For example, in § 1983 false arrest or malicious

prosecution cases, courts consistently have held, except in very narrow circumstances, that the submission of a warrant or indictment request to an independent intermediary, *e.g.,* a magistrate or grand jury, once approved, breaks the causal chain necessary to establish § 1983 liability. *See, e.g., Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010) (grand jury indictment against plaintiff precluded liability for § 1983 false arrest claim); *Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir. 1988) (grand jury indictment against plaintiff precluded liability for § 1983 malicious prosecution claim).

Here, the City Council is the policymaking body of the City of McKinney for purposes of § 1983; the actions taken by the Council, both as to the 2019 charter amendments and the scheduled 2020 recall election, were mandated by state law and the City Charter, and Plaintiffs' Complaint makes no allegation to the contrary. *See* Pls.' Compl., ECF Doc. No. 1, *passim.* The voters will decide the fate of Councilman Shemwell in an election in which Defendant City of McKinney will cast no vote. Those same voters, not the City, will be the "moving force" and the final authority to make that determination, thereby breaking any direct causal connection between the City's actions and Plaintiffs' alleged injuries and absolving the City of liability under § 1983.

**B.**     **Section 2 of the Voting Rights Act does not apply to recall election cases**

In a case with remarkable similarities to the instant matter, a federal district court in Texas expressly rejected the argument that § 2 of the Voting Rights Act applies to the recall petition process. In *McBride,* 2011 WL 13249480, at *8-10, a group of citizens initiated a recall election for Council members who had voted for the appointment of a new police chief. The recall procedures were provided by the city's charter, which allowed the city's qualified voters, on an at-large basis, to subject a city council member representing a single-member district to a recall election. *Id.* at *1.

Acknowledging that courts should interpret the Voting Rights Act "in a manner that provides the broadest possible scope," *id*. at *8 (citing *Chisom v. Roemer*, 501 U.S. 391, 403 (1991)), the court also cautioned that "for [§] 2 to apply, the challenged situation must constitute a qualification, prerequisite, standard, practice or procedure within the meaning of [§] 2." *McBride,* 2011 WL 13249480, at *8 (citing *United States v. Brown*, 561 F.3d 420, 432 (5th Cir. 2009)).

The court stated that courts generally were reluctant to apply the Voting Rights Act to the petition process, and identified three different circuit courts of appeals that have held the Act does not apply to voter-initiated petitions. *McBride,* 2011 WL 13249480, at *8-10; *Padilla v. Lever*, 463 F.3d 1046, 1050-53 (9th Cir. 2006); *Montero v. Meyer*, 861 F.2d 603, 607-09 (10th Cir. 1988); *Delgado v. Smith*, 861 F.2d 1489, 1492-93 (11th Cir. 1988). It then stated it was "unaware of any court that has addressed whether a charter violates § 2 of [the Act] by allowing citizens, on an at large basis, to subject the elected representatives of a single-member district to a recall election, and Plaintiffs have failed to cite such a case." *McBride,* 2011 WL 13249480, at *8.

The court next considered a case decided by the Fifth Circuit, *Smith v. Winter*, 717 F.2d 191 (5th Cir.1983), which it concluded "has only suggested that 'allegations of improper conduct in the application of the recall process [would have to be liberally] construed to implicate rights arising under [§] 2.'" *McBride,* 2011 WL 13249480, at *8. The *Smith* court, notably, "considered the scope of the 'right to vote' within the meaning of [the Act] and concluded that it 'stops short of any absolute right to resist recall from office'"; rather, the "right[ ] to vote," it held, "[is] consummated and made effective in the election." *Id.* at *9; *Smith*, 717 F.2d at 199. The *McBride* court held that the plaintiffs' claim failed because "this issue is unresolved, especially in the Fifth Circuit." *McBride,* 2011 WL 13249480, at *10.

C.     **Plaintiffs cannot plead or prove a claim for injunctive relief under the Voting Rights Act**

Plaintiffs ask this Court to enjoin the City "from conducting the recall election during the November 2020 cycle while it considers this Complaint." *See* Pls.' Compl., ECF Doc. No. 1, p. 16, Prayer. That request is totally without merit and Plaintiffs offer absolutely no legal authority in support of the Court granting such extraordinary relief. *Id., passim.*

As in this case, the *McBride* plaintiffs sought preliminary injunctive relief; however, the court denied that request, noting that injunctive relief is an extraordinary and drastic remedy, and the movant has the burden, by a clear showing, to establish (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Id.* at *5 (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).

The court determined that the plaintiffs were unable to establish the first of the four bases for awarding injunctive relief, *i.e.*, a substantial likelihood of success on the merits, given the *Smith* decision, which afforded no basis to apply the Voting Rights Act to recall procedures. *McBride,* 2011 WL 13249480, at *10; *Smith*, 717 F.2d at 199. The same logic applies here, as the Complaint does not allege, and Plaintiffs therefore are unable to show, that they can establish a substantial likelihood of success on the merits under the Act. *See* Pls.' Compl., ECF Doc. No. 1, *passim*.[11] As the *McBride* court held in denying the plaintiffs' requested injunctive relief based on that first prong, "Plaintiffs have not cited, nor can the court find, any decision in which other plaintiffs have

---

[11] Here, Plaintiffs have failed to allege *any* of the requisite four prongs cited in *McBride* that arguably would entitle them to injunctive relief.

prevailed on arguments remotely similar to those asserted in the present case." *McBride,* 2011 WL 13249480, at \*10-13.

Further, this is the second of two lawsuits brought in this Court in which Shemwell has complained of alleged constitutional injuries arising from the same common nucleus of operative facts – an election the City Council is required to hold under state law and the City Charter, based on a citizen-initiated petition, for voters to determine whether he should be removed as, or remain, a McKinney City Councilmember. The Complaint in the first suit was filed on January 20, 2020, and voluntarily dismissed less than two months later, on March 13, 2020; Plaintiffs filed their Complaint in this case on September 13, 2020. This Motion is filed on October 5, 2020, and the recall election, originally scheduled this past May, is now scheduled for November 3, 2020, four weeks from the date of this filing.[12] At no time from January 20 of this year to the present date – a period of more than eight months – has any Plaintiff requested and participated in an expedited, evidentiary hearing on the issue of injunctive relief related to the recall election.

It is well established in this and other Circuits that a substantial delay between pleading for injunctive relief and actually seeking that relief can successfully rebut a plaintiff's claim that irreparable harm will result if the relief is not granted.

> [D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief. Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm.

*Gonannies, Inc. v. Goaupair, Inc.,* 464 F.Supp. 603, 609 (N.D. Tex. 2006) (citing *Wireless Agents, L.L.C. v. T–Mobile USA, Inc.,* 2006 WL 1540587, \*3 (N.D. Tex. June 6, 2006) (Fitzwater, J.) (internal citations and punctuation omitted)). The court in *Gonannies* denied the plaintiffs' request

---

[12] Early voting in Texas begins October 13, 2020.  https://www.votetexas.gov/mobile/voting/when.htm

for relief, stating that the plaintiffs' more than six-month, "undue delay would be sufficient to rebut any possible presumption of irreparable harm. *Id.*; *see also Tough Traveler, Ltd. v. Outbound Prod.,* 60 F.3d 964, 968 (2d Cir.1995) (vacating preliminary injunction where movant waited four months to seek a preliminary injunction after filing suit); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985) (ten-week delay in seeking injunction for trademark infringement undercut claim of irreparable harm); *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1193 (5th Cir.1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request). In short, equity aids the vigilant, not those who sleep on their rights.

Plaintiffs have failed to adequately plead both sufficient facts and legal authority to support the granting of the relief they request. More than eight months have elapsed since the first suit was brought and no one has affirmatively acted since then to obtain injunctive relief; and, early voting for the November 3, 2020 election opens in one week. Plaintiffs' Complaint fails to state a claim for relief under § 2 of the Voting Rights Act, including injunctive relief, and the City's Motion, therefore, should be granted.

## D.     Plaintiffs should not be permitted to amend or replead their Complaint

The Court, in granting this Motion, has the discretion to allow Plaintiffs to attempt to replead a viable cause of action. For the reasons stated above, the City urges the Court that it not permit Plaintiffs to amend their Complaint. If, however, the Court does not grant this Motion in its entirety, the City respectfully requests additional time to file an answer responsive to any remaining counts in Plaintiffs' Complaint.

## VII.   REQUEST FOR RELIEF

For the reasons stated above, Defendant City of McKinney, Texas, respectfully requests that the Court grant this Motion, dismissing all of Plaintiffs' claims against it based on the pleading deficiencies of the Complaint and Plaintiffs' failure to cite any authority in support of those claims, as well as pertinent Fifth Circuit precedent that expressly rejects Plaintiffs' claims under the Voting Rights Act. The City also prays for any additional relief, general or special, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,


/s/ Kent S. Hofmeister
**Kent S. Hofmeister**
State Bar No. 09791700
khofmeister@bhlaw.net
**Robert F. Brown**
State Bar No. 03164725
rbrown@bhlaw.net
**BROWN & HOFMEISTER, L.L.P.**
740 East Campbell Road, Suite 800
Richardson, Texas 75081
(214) 747-6100 (Telephone)
(214) 747-6111 (Telecopier)

**William W. Krueger, III**
State Bar No. 11740530
wkrueger@kruegerlaw.org
THE LAW OFFICE OF
WILLIAM W. KRUEGER III, PC
2100 Alamo Road, Suite T
Richardson, Texas 75080
(214) 253-2600 (Telephone)
(214) 253-2626 (Telecopier)

*Attorneys for Defendant City of McKinney, Texas*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of October, 2020, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas, Sherman Division, using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.

/s/ Kent S. Hofmeister
**Kent S. Hofmeister**