UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LA'SHADION SHEMWELL, | § | |
| in his official capacity as a city council | § | |
| member, and in his individual capacity as | § | |
| a voter in District 1, and FLORINE | § | |
| HENRY, and DEBRA FULLER, | § | |
| | § | Civil Action Complaint |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:20-cv-00687-SDJ |
| v. | § | |
| | § | JURY DEMAND |
| CITY OF MCKINNEY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUR-REPLY IN FURTHER RESPONSE/OPPOSITION TO DEFENDANT CITY OF MCKINNEY'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT

Defendant City of McKinney, Texas ("Defendant" or "City"), pursuant to this Court's Order on Supplemental Briefing (EFC Doc. No. 11), files this response to Plaintiffs' Sur-Reply in Further Response/Opposition to Defendant's Motion to Dismiss ("Sur-Reply").

**A. Plaintiffs have failed to sufficiently plead that the City was the "moving force" behind any alleged violation of their constitutional rights**

Plaintiffs allege that both the election to change the City's Charter and the election to recall Councilman Shemwell were initiated by the citizens of McKinney. *See* Pls.' Compl., ECF Doc. No. 1, pp. 9-11, 13, ¶¶ 38, 40-41, 45, 51 (recall election); and pp. 15-16, ¶¶ 46-50 (Charter amendment election). Plaintiffs also do not contest that the City is required under its Charter to call elections for both citizen-initiated Charter amendments and citizen-initiated recall petitions. *See* Sur-Reply at 2, 5. Plaintiffs assert, however, in conclusory terms, that City officials "pushed forward a charter amendment" that resulted in a violation of their civil rights. *See* Sur-Reply at 2-

3. Consistent with Plaintiffs' counsel's remarks to the Court at the October 22, 2020 hearing on Defendant's Motion to Dismiss, the Sur-Reply effectively asks this Court to save Plaintiffs' deficient pleading by allowing them to engage in a discovery "fishing expedition" to prove matters not pled in their Complaint, including that Mayor Fuller supported the recall efforts against Councilman Shemwell. *See* Sur-Reply at 2-5.

Plaintiffs' Sur-Reply describes various "facts" concerning the Mayor that Plaintiffs could have asserted in their Complaint, but they offer no explanation why their Complaint fails to contain those assertions. *Id*. Moreover, the allegations against the Mayor, even if they were accepted as true, fail to establish an official municipal policy, practice, custom, or usage under *Monell* and its progeny because the Mayor, as a matter of law, is not the final policymaker of the City, but is only one of seven City Council members. Additionally, the positions allegedly taken by the Mayor do not reflect any racial animus against Councilman Shemwell; rather, they simply indicate, based on the pleadings, the Mayor's apparent belief that Councilman Shemwell's actions constituted conduct unbecoming of an elected city official that reflected poorly, citywide, on the City of McKinney.

In short, even if Plaintiffs had pled, and could prove, their allegations against the Mayor, it would not establish that the City, as an entity, was the moving force behind Plaintiffs' alleged constitutional deprivations. While the Mayor may have fully supported both the Charter amendment and the recall efforts, his individual support does not constitute a municipal policy attributable to the McKinney City Council, and his support does not change the fact that both the election to change the City Charter and the election to recall Councilman Shemwell were initiated by the citizens of McKinney. The City Council, in calling those elections, simply acted in

accordance with what state law required. The citizens, not the City, were the moving force of the matters of which Plaintiffs' complain. Plaintiffs' § 1983 claims should be dismissed.

**B.     Section 2 of the Voting Rights Act does not apply to citizen-initiated recall petitions**

The City has found no authority holding that a citizen-initiated charter amendment process, or a citizen-initiated recall petition process, violates Section 2 of the Voting Rights Act. In fact, the only court from this Circuit to specifically examine this issue explained that courts are generally reluctant to apply the Voting Rights Act to a citizen-initiated process. *See McBride v. City of Jasper,* No. 1:11-cv-443, 2011 WL 13249480 at *8 (E.D. Tex. 2011). *McBride* reasoned that Section 2 does not apply to citizen-initiated recall petitions because citizen-initiated petitions do not constitute state action. *See id.* at *8-10 (applying *Padilla v. Lever,* 463 F.3d 1046, 1050-53 (9th Cir. 2006); *Montero v. Meyer,* 861 F.2d 603, 607-09 (10th Cir. 1988); *Delgado v. Smith,* 861 F.2d 1489, 1492-93 (11th Cir. 1988)). Accordingly, the adoption of two citizen-initiated home-rule charter amendments, coupled with the Mayor and City Council members speaking publicly in favor of a citizen-initiated recall petition, does not constitute "state action" subject to Section 2 of the Voting Rights Act. *Compare generally,* Pls.' Compl., ECF Doc. No. 1, *with McBride,* 2011 WL 13249480 at *8-10.

The *McBride* analysis focuses on three cases – *Padilla, Montero,* and *Delgado*, each of which examined Voting Rights Act challenges to the citizen-initiated petition process. *See id.* (discussing *Padilla,* 463 F.3d at 1050-53; *Montero,* 861 F.2d at 607-10; *Delgado,* 861 F.2d at 1489, 1492-93, 1496-97). In each case, the court used statutory construction to determine whether the citizen-initiated process fell within the scope of the Voting Rights Act. *See Padilla,* 463 F.3d at 1050-52 *Montero,* 861 F.2d at 609-610; *Delgado,* 861 F.2d at 1492-93, 1496-97. And in each

case, the court found that citizen-initiated recalls did not fall within the scope of the Voting Rights Act because they did not involve state action. *See McBride,* 2011 WL 13249480 at \*8-10.

In *Padilla,* the Ninth Circuit found that the citizen-initiated recall petition at issue was not subject to the bilingual and multilingual requirements of Section 5 of the Voting Rights Act because such petition was not provided by the governmental entity. *See Padilla,* 463 F.3d at 1050-52 (examining statutory language of Section 5 of the Voting Rights Act). The court noted that the governmental entity did not fill out the petition, supply the grounds for recall, pay to print the petition, or circulate the petition for signature; therefore, the government did not *provide* the recall petition. *Id.*

In *Montero,* the Tenth Circuit found that a citizen-initiated constitutional amendment petition was not subject to the bilingual and multilingual requirements of Section 5 of the Voting Rights Act because such petition was not provided by the governmental entity. *See Montero,* 861 F.2d at 609-10 (applying statutory language of Section 5 of the Voting Rights Act and article V, section I of the Colorado Constitution). The court noted that the governmental entity cannot initiate and, thus, has no control over, a constitutional amendment petition. *Id.* at 609-10.

Similarly, in *Delgado,* the Eleventh Circuit found that the citizen-initiated constitutional amendment petition was not subject to the bilingual and multilingual requirements of Section 5 of the Voting Rights Act because the petition was not provided by the governmental entity. *See Delgado,* 861 F.2d at 1496-97 (applying statutory language of Section 5 of the Voting Rights Act and article XI, section 3 of the Florida Constitution). The Court noted that the governmental entity did not initiate or draft the petition, address its merits, or participate in the circulation or collection of signatures. *Id.* at 1497.

In each case, the court found that ministerial acts related to the citizen-initiated petition process were not sufficient to transform private action into state action. *See Padilla,* 463 F.3d at 1051 ("It is not reasonable to hold that this regulatory process transforms petitions privately initiated, drafted and circulated by the proponents into petitions 'provided' by the County for purposes of the Voting Rights Act."); *Montero,* 861 F.2d at 610 ("[S]tate regulation is insufficient to convert private action into state action."); *Delgado,* 861 F.2d at 1497 ("Such regulation is not sufficient to transpose such private conduct into state action.").

Applying the same reasoning here, Plaintiffs' alleged wrongful actions do not constitute state action. Section 2 of Voting Rights Act provides in relevant part that:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

42 U.S.C. §1973aa (now found at 52 U.S.C. § 10301).

Plaintiffs concede that the complained of actions were not taken by the City of McKinney. *See* Pls.' Compl., ECF Doc. No. 1, *passim*. Specifically, Plaintiffs allege that (1) the changes to McKinney's recall process were the result of citizen-initiated Charter amendments; and (2) the recall petition was a citizen-initiated petition initiated by voters of the City of McKinney. *See* Pls.' Compl., ECF Doc No. 1 at pp. 2-3, 10-13, ¶¶ 4-5, 7, 40-51; *see also* Pls.' Resp./Opp. To Def.'s Motion to Dismiss, ECF Doc. No. 8, at pp. 5-6. Plaintiffs also conceded at the October 22 hearing before this Court that the Mayor and City Councilmembers have a First Amendment right to speak publicly in favor of, or against, political issues.

Plaintiffs attempt to work around these issues by claiming that the City was the "de facto" force behind the home-rule charter amendments and recall petition because the Mayor and certain

City Council members spoke publicly in support of these issues. *See* Pls.' Compl., ECF Doc. No. 1, pp. 2, ¶¶ 2, 4, 7, 41-42. This argument is not supported by the facts or the law.

Plaintiffs' argument ignores the plain language of the relevant statutes that govern home-rule charter amendments and recall petitions. In particular: (1) home-rule charter amendments cannot be adopted unless approved by a majority of the voters; and (2) a recall petition can only be initiated by voters of the City of McKinney. *Compare generally* Pls.' Compl., ECF Doc. No. 1 *with* TEX. LOC. GOV'T CODE ANN. § 9.005 (home-rule charter amendments) and City of McKinney Home-Rule Charter, Sec. 144 (recall petitions).

Plaintiffs' reliance on *McBride,* for the proposition that a home-rule charter amendment that provides for a citywide recall election for a single-member district council member violates Section 2 of the Voting Rights Act, is also misguided. *See* Sur-Reply at 6-9. While focusing on dicta, Plaintiffs neglect the fact that the state court order referenced in *McBride* does not implicate the Voting Rights Act, but rather applies a simple exercise of statutory construction to two seemingly contradictory home-rule charter provisions. *See In re Stewart,* No. 09-11-00467, 2011 WL 3847449 at *2 (Tex.App.-Beaumont 2011, orig. proceeding) (comparing Sections 6.02, 6.09, and 3.01 of the Jasper Home-Rule Charter). There are no conflicting home-rule charter provisions at issue here. And while *McBride* may ponder the soundness of allowing a citywide election to recall a single-member district city council member, it acknowledges that it could find no controlling authority prohibiting such practice; accordingly, it denied Plaintiffs' request for a preliminary injunction. *See McBride,* 2011 WL 13249480 at *13.

The other cases relied upon by Plaintiffs are also distinguishable. *See* Sur-Reply at 9-11. For example, in *Operation King's Dream v. Connerly,* the court held that the actions of a distinct private political group, whose chairman was a state-elected official who used his public position

to obtain assistance from the State Attorney General to further the group's political objectives, was subject to Section 2 of the Voting Rights Act. *See Operation King's Dream v. Connerly,* No. 06-12773, 2006 WL 2514115 *3, 12-16. (E.D. Mich. 2006). The facts in *Operation King's Dream* are not remotely similar to those at issue here.

Plaintiffs' reliance on *Armstong, Tigrett*, and *Mallory* is also misplaced, as none of these cases involves a citizen-initiated recall petition and election. *See Armstrong v. Allain,* 893 F. Supp. 1320 (S.D. Miss 1994) (school bond referenda initiated by local school districts); *Tigrett v. Cooper,* 855 F.Supp.2d 733 (W.D. Tenn. 2012) (charter proposition initiated by a government charter commission established by city and county officials); *Mallory v. Eyrich,* 839 F.2d 275, 276 (6th Cir. 1988) (regularly scheduled judicial elections initiated as a matter of course by the local governing body). The instant case involves a special recall election that was conducted based on the City's receipt of a certified petition initiated and controlled by the voters of McKinney, not the City.

**C.       District 1 Voters Favored Amending the City's Recall Process**

Plaintiffs' claim that the City intentionally "pushed forward" the two home-rule charter amendments to dilute the voting strength of District 1 voters to allow the removal of District 1's elected representative is misplaced. In fact, District 1 voted decisively *in favor* of increasing the time to circulate, and reducing the number of signatures required for, a recall petition by a margin of 58.9% (476 votes) to 41.1% (331).[1] The voters of District 1 also overwhelmingly voted *in favor*

---

[1] At the time of the May 4, 2019 home-rule charter amendment election, McKinney City Council District 1 consisted of Precincts 2, 3, 4, 16, 43, 44, 96, 98, 100, 150, and 179. *See* Statement of Votes Cast, Collin County, Texas, General and Special Elections May 4, 2019 at p.2439, 2462 (Precinct 2); p. 2439, 2462 (Precinct 3); p. 2439, 2462 (Precinct 4); p. 2440, 2463 (Precinct 16); p. 2443, 2466 (Precinct 43); p. 2443, 2466 (Precinct 44); p. 2448, 2471 (Precinct 98); p. 2448-49, 2471-72 (Precinct 100); p. 2453-54, 2476-77 (Precinct 150); p. 2456, 2479 (Precinct 179) available at: https://www.collincountytx.gov/elections/election_results/Archive/2019/05042019/May%204,%202019%20Combined%20Election%20Day%20and%20Early%20Voting%20Statement%20of%20Votes%20Cast.pdf
As before, Defendant asks that this Court take judicial notice of the information that appears on the voting links in this Response, and that is available to the public on the Collin County official web site.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUR-REPLY IN FURTHER RESPONSE/OPPOSITION TO DEFENDANT CITY OF MCKINNEY'S MOTION TO DISMISS - Page 7**

of the amendment clarifying that a recall of a City Council member should be conducted in a citywide election by 78.5% (632 votes) to 21.5% (173 votes).[2]

### D. District 1 Voters Favored the Recall of Councilmember Shemwell

Plaintiffs' claim that the citywide election to recall Councilmember Shemwell was intentionally designed to dilute the voting strength of the voters in District 1 to remove their elected representative is also without merit. Election results from the Collin County Elections Office indicate that a majority of the voters in District 1 - two out of every three people - voted *in favor* of recalling Council member Shemwell by a margin of 66.24% (6,191 votes) to 33.76% (3,156 votes).[3] Even had the City limited the recall election solely to District 1 voters (as Plaintiffs requested), the result would have been the same: Councilman Shemwell would have been recalled by District 1 voters in the same manner that he was recalled and removed by the voters citywide.

There simply is no case here. This Court should grant the City's Motion to Dismiss.

---

[2] *See id.* at p. 2485, 2508 (Precinct 2); p. 2485, 2508 (Precinct 3); p. 2485, 2508 (Precinct 4); p. 2487, 2509 (Precinct 16); p. 2489, 2512 (Precinct 43); p. 2489, 2512 (Precinct 44); p. 2494, 2517 (Precinct 96); p. 2494, 2517 (Precinct 98); p. 2494-95, 2517-18 (Precinct 100); p. 2499-2500, 2522-23 (Precinct 150); p. 2502, 2525 (Precinct 179).

[3] At the time of the November 3, 2020 recall election, McKinney City Council District 1 consisted of Precincts 2, 3, 4, 9, 16, 43, 44, 96, 98, 100, 150, 179, and 231. District 1 voters favored recall 66.24% (6,191 votes) to 33.76% (3,156 votes). *See* Collin County Registrar's Office Summary Results Report, dated November 3, 2020, at p. 16 (Precinct 2); p. 24 (Precinct 3); p. 32 (Precinct 4); p. 79 (Precinct 9); p. 137 (Precinct 16); p. 363 (Precinct 43); p. 371 (Precinct 44); p. 772 (Precinct 96); p. 788 (Precinct 98); p. 805 (Precinct 100); p. 1216 (Precinct 150); p. 1478 (Precinct 179); p. 231 (p. 1940) (available at:
https://www.collincountytx.gov/elections/election_results/Latest%20Results/November%203,%202020%20Combined%20Election%20Day%20and%20Early%20Ballots%20-%20Statement%20of%20Votes%20Casts.pdf

Respectfully submitted,

/s/ Kent S. Hofmeister
**Kent S. Hofmeister**
State Bar No. 09791700
khofmeister@bhlaw.net

**Robert F. Brown**
State Bar No. 03164725
rbrown@bhlaw.net

**Michael L. Martin**
State Bar No. 24108956
mmartin@bhlaw.net

**BROWN & HOFMEISTER, L.L.P.**
740 East Campbell Road, Suite 800
Richardson, Texas 75081
(214) 747-6100 (Telephone)
(214) 747-6111 (Telecopier)

**William W. Krueger, III**
State Bar No. 11740530
wkrueger@kruegerlaw.org
THE LAW OFFICE OF
WILLIAM W. KRUEGER III, PC
2100 Alamo Road, Suite T
Richardson, Texas 75080
(214) 253-2600 (Telephone)
(214) 253-2626 (Telecopier)

*Attorneys for Defendant City of McKinney, Texas*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November, 2020, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas, Sherman Division, using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.

/s/ Kent S. Hofmeister
**Kent S. Hofmeister**