UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LA'SHADION SHEMWELL, § <br> in his official capacity as a city council § <br> member, and in his individual capacity as § <br> a voter in District 1, and FLORINE § <br> HENRY, and DEBRA FULLER, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> CITY OF MCKINNEY, TEXAS, § <br> § <br> Defendant. § | Civil Action No. 4:20-cv-00687-SDJ <br><br> JURY DEMAND |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of McKinney, Texas ("City"), pursuant to this Court's November 17, 2020 Order on Supplemental Briefing (Dkt. #14), respectfully submits this Supplemental Brief.

**A.    Ripeness and Mootness**

District 1's minority voting power was not diluted in either the 2019 home-rule charter amendment election or the 2020 recall election because District 1 voters overwhelmingly approved the charter amendments revising the recall process and voted to recall and remove Councilmember Shemwell ("Shemwell").[1] As a result, no vote dilution has occurred and, hence, no justiciable controversy exists. To be ripe, a matter requires an actual controversy. Plaintiffs assert that Blacks

---

[1] *See* Defendant's Response to Plaintiffs' Sur-Reply in Further Response/Opposition to Defendant City of McKinney's Motion to Dismiss, Dkt. #13 ("City's Response"), at pp. 7-8. District 1 voted decisively *in favor* of (1) increasing the time to circulate, and reducing the number of signatures required for, a recall petition by a margin of 58.9% (476 votes) to 41.1% (331 votes); (2) clarifying that a recall of a City Council member should be conducted in a citywide election by 78.5% (632 votes) to 21.5% (173 votes); and (3) recalling Councilmember Shemwell by a margin of 66.24% (6,191 votes) to 33.76% (3,156 votes).

and Hispanics constitute a majority of District 1 voters (55.6%). Plaintiffs' Original Complaint, Dkt. #1 ("Complaint"), ¶31. However, had the City limited the recall election to District 1 voters (as Plaintiffs requested), Shemwell still would have been recalled in the same manner as occurred in the citywide election. Accordingly, as a matter of law, the November 3, 2020 citywide election to recall Shemwell did not disenfranchise or dilute the voting strength of the Black and Hispanic voters of District 1; therefore, Plaintiffs' claims are not yet ripe and must be dismissed.[2]

In addition to ripeness, a case must not be moot. "To qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed." *Lopez v. City of Houston,* 617 F.3d 336, 340 (5th Cir. 2010) (quoting *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs,* 217 F.3d 393, 396 (5th Cir. 2000)); *Pool v. City of Houston,* 978 F.3d 307, 313 (5th Cir. 2020) (plaintiff's asserted interest must exist throughout the litigation). If intervening events "make it impossible for the court to 'grant any effectual relief,' the case is moot." *Id.* (citing *Knox v. Serv. Emps. Int'l Union, Local 1000,* 567 U.S. 298, 307 (2012)). To survive mootness, a plaintiff's claim must be capable of repetition, yet evading review. *Lopez,* 617 F.3d at 340. For a challenged action to be capable of repetition, yet evading review, a reviewing court must find that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action." *Id.* (citing *Weinsten v. Bradford,* 423 U.S. 147, 149 (1975)).[3]

---

[2] "A court should dismiss a case for a lack of 'ripeness' when the case is abstract or hypothetical." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (citing *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)). If the case presents a purely legal question, plaintiffs must show that they will suffer some injury if the court were to decline consideration of the case. *Id.* (citing *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007)).

[3] To meet this second requirement, the party seeking to survive mootness "must show a 'demonstrated probability' or 'reasonable expectation,' not merely a 'theoretical possibility,' that it will be subject to the same government action." *Lopez,* 617 F.3d at 340 (citing *Libertarian Party v. Dardenne,* 595 F.3d 215, 217 (5th Cir. 2010). Or put more simply, a plaintiff must show more than that the covered entity may act in the same unlawful manner, they must show that the

While Plaintiffs might assert this Court is authorized to invalidate a past election to remedy a Voting Rights Act violation, and thus avoid mootness, "such invalidation is an extraordinary remedy that can only be employed in exceptional circumstances, usually when there has been egregious defiance of the Voting Rights Act on the part of the covered entity." *Lopez,* 617 F.3d at 340. Moreover, to void an election, courts generally require that plaintiffs seek pre-election relief.[4] And while seeking pre-election relief is not always required to be able to void an election, courts have granted this extraordinary remedy only in limited circumstances.[5] Here, Plaintiffs have repeatedly chosen not to seek pre-election relief; consequently, they are not properly positioned to seek to strike down the election results after the fact and their case is moot.[6]

The election results demonstrate that the City's actions did not intentionally and egregiously violate Plaintiffs' constitutional rights or the Voting Rights Act. Further, since the November 2020 recall election has already occurred, this Court can no longer provide the relief Plaintiffs seek; therefore, the Court lacks the requisite basis to invalidate the election. Plaintiffs'

---

covered entity *will* act in that manner. *Id.* at 341 (quoting *Libertarian Party,* 595 F.3d at 217) (emphasis in original)). Plaintiffs have made no such allegations in their Complaint.

[4] *Toney v. White,* 488 F.2d 310, 314 (5th Cir. 1973) ("We agree with the panel that the law imposes the duty on parties having grievances based on discriminatory practices to bring the grievances forward for pre-election adjudication."). The public policy underpinning this tenet is that failure "to require prompt pre-election action … as a pre-requisite to post-election relief may permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." *Id.*

[5] *See Rodriguez v. Bexar Cty., Tex.,* 385 F.3d 853, 859, n.2 (5th Cir. 2004) ("Such a remedy should only be imposed where timely pre-election relief is either denied or precluded."); *see also Lyles v. Hale County Comm'n,* No. 04-0711-CG-M, 2005 WL 8158888 at *5 (S.D. Ala. 2005) ("The cases in which courts have set aside elections despite a plaintiff's failure to seek pre-election relief arose in the context of intentional racial discrimination against the backdrop of the Civil Rights Movement.").

[6] *See Lopez,* 617 F.3d at 339-42 (completion of the 2009 Houston city council election rendered moot plaintiffs' claims that Houston's failure to add two city council seats, and redistricting the existing seats following mid-census population changes, violated the Voting Rights Act and Fourteenth and Fifteenth Amendment); *Hancock Cty Bd. of Supervisors v. Ruhr,* 568 Fed. Appx. 295, 298-99 (5th Cir. 2014) (completion of 2011 county elections held prior to redistricting based upon the 2010 census rendered moot plaintiffs' claims that the counties' actions violated the "one person, one vote" principle of the Fourteenth Amendment).

Voting Rights Act claim is now moot and, absent a live claim under the Act, the Court need not consider or decide Plaintiffs' Fifteenth Amendment claim.[7]

B.  **Section 2 of the Voting Rights Act under *Gingles***

Plaintiffs have failed to adequately plead a § 2 vote-dilution claim. First, their allegations fail to rebut the presumption that the City acted in good faith in this matter. Second, Plaintiffs fail to adequately plead all three required *Gingles* factors, and to additionally plead facts to show that these factors impeded Black and Hispanic District 1 voters' participation in the political process and in electing the representatives of their choice. *Thornburgh v. Gingles*, 478 U.S. 30, 47 (1986).

1.  **Plaintiffs have failed to plead facts to rebut the good faith presumption of the City's actions**

When a plaintiff asserts that a law was enacted with discriminatory intent, the burden of proof lies with the plaintiff, not the State. *See Abbott v. Perez,* 138 S. Ct. 2305, 2324 (2018). When the challenge involves voting districts, as in this case, courts presume the governmental entity acted in good faith, and a plaintiff must provide sufficient evidence to rebut this presumption. *Id.* Plaintiffs here have failed to plead facts to rebut the presumption that the City acted in good faith in submitting the proposed home-rule charter amendments revising the City Councilmember recall process to the electorate, and in exercising its ministerial duty to call an election to recall Shemwell upon receipt of a certified recall petition. *See* Complaint, *passim*.

Plaintiffs' sole evidence supporting their claims is that the Mayor and certain City Councilmembers personally supported the adoption of the home-rule charter amendments and the

---

[7] If this Court finds that Plaintiffs have not sufficiently pled that the City violated § 2 of the Voting Rights Act, it need not decide Plaintiffs' ancillary Fifteenth Amendment claim. "It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Escambia Cty., Fla. v. McMillan,* 466 U.S. 48, 51-52 (1984) (Court declined to rule on plaintiffs' Thirteenth, Fourteenth, and Fifteenth Amendment claims because a ruling on the Voting Rights Act claim would moot the constitutional questions). The Voting Rights Act was passed to effectuate enforcement of the Fifteenth Amendment. *Mi Familia Vota v. Abbott,* 977 F.3d 461, 469 (5th Cir. 2020).

recall of Shemwell. *See id*. Elected officials, however, are legally permitted to express their personal beliefs on issues before the electorate, and statements or actions reflecting such beliefs are protected under the First Amendment. Even if Plaintiffs' allegations are accepted as true, such conduct or statements do not constitute state action necessary for a successful § 2 claim, nor do they rebut the presumption that the City's actions were made in good faith.

### 2. The *Gingles* Factors

To establish a § 2 vote-dilution claim, a plaintiff must plead that: (1) a minority group is sufficiently large and geographically compact to constitute a majority in a legislative district; (2) the identified minority group is politically cohesive; and (3) a district's white majority must votes "sufficiently" as a bloc to usually defeat the minority's preferred candidate. *Cooper v. Harris,* 137 S.Ct. 1455, 1460 (2017) (citing *Gingles,* 478 U.S. at 50-51); *Lopez v. Abbott*, 339 F.Supp.3d 589, 601-03 (S.D. Tex. 2018). Proof of all three threshold conditions "creates an inference that members of the minority are in fact harmed by the challenged electoral practice, procedure, or structure." *Id.* at 601-02*,* citing *Uno v. City of Holyoke*, 72 F.3d 973, 979 (1st Cir. 1995). The inference, however, is rebuttable, and the *Gingles* "totality of the circumstances" test is "the means by which the inference of vote dilution may be rebutted or cemented." *Lopez*, 339 F.Supp.3d at 602.

### a.     **The mixed minority group is not sufficiently large and geographically compact**

To sustain a § 2 claim, a plaintiff must plead that the challenged practice diluted the voting strength of a minority group in a majority-minority district. "[T]he purpose behind this requirement is that '[u]nless minority voters possess the *potential* to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." *Bartlett v. Strickland,* 556 U.S. 1, 15 (2009) (citing *Gingles,* 478 U.S. at 50, n.17 (emphasis in original)).

A majority-minority district is a district in which a minority group constitutes a numerical, working majority of the voting age population. *Bartlett,* 556 U.S. at 13. If the minority group does not constitute a majority, it lacks the power to elect a candidate based solely on its own votes without assistance from other groups. *Id.* Section 2 serves to protect a minority group's right to elect its own representative, but it does not serve to protect a minority group from having to "pull, haul, and trade to find common political purposes" to achieve its political goals. *Id.* (citing *Johnson v. De Grandy,* 512 U.S. 997, 1020 (1994)).

The Fifth Circuit has recognized that for purposes of a § 2 claim, a minority group may consist of more than one distinct ethnic group, provided that the different groups live close together and constitute an overwhelming majority.[8] Plaintiffs plead that Black and Hispanic voters in District 1 constitute a sufficiently large minority group because, according to the 2010 Census, Blacks and Hispanics constituted 55.6% of the population of District 1. *See* Complaint, ¶ 31. Specifically, they allege that District 1 is 38.3% Hispanic and 17.3% Black. *See id.*

Importantly, the size of the minority group in District 1 is far smaller than those examined in *LULAC* and *Campos. Compare* Complaint, ¶ 31, *with LULAC,* 817 F.2d at 1499-1500 (Black and Hispanic population of 71.5%), and *Campos,* 840 F.2d at 1242-44 (Black and Hispanic populations between 65.9% and 76.9%). The Complaint also wholly fails to state whether the 55.6% number refers to the total population or voting-age population of District 1. *See* Complaint, ¶ 31. As explained above, a § 2 analysis is based on voting-age population. *Bartlett,* 556 U.S. at 13. If the Complaint refers to total population, not voting-age population, the affected minority

---

[8] *See Perez v. Abbott,* 250 F.Supp.3d 123, 135-38 (W.D. Tex. 2017), *aff'd in part, rev'd in part and remanded,* 138 S. Ct. 2305 (2018) (discussing *League of United Latin Am. Citizens, Council No. 4386 v. Midland Indep. Sch. Dist. (LULAC),* 817 F.2d 1494, 1499-1500 (5th Cir. 1987), *vacated on state law grounds,* 829 F.2d 546 (5th Cir. 1987) (examines district with Black and Hispanic population of 71.5%) and *Campos v. City of Baytown, Tex.,* 840 F.2d at 1240, 1242-44 (5th Cir. 1988) (examines districts with Black and Hispanic populations between 65.9% and 76.9%)); *see also Bartlett,* 556 U.S. at 14-15 (39% Black voting block not sufficiently large to trigger § 2).

group likely dips well below the 50% required to sustain a § 2 claim. And, if taken as stand-alone groups, neither Black nor Hispanic voters in District 1 likely constitute a sufficiently large enough group to independently sustain a § 2 claim. *See Bartlett,* 556 U.S. at 14-15.

      **b.**      **The mixed minority group is not politically cohesive**

To sustain a § 2 claim, a plaintiff must also plead that the affected minority group is politically cohesive. If the affected minority group is not politically cohesive, the challenged practice cannot thwart the minority group's distinctive interests. *Gingles,* 478 U.S. at 51. Political cohesiveness means that an identified group of voters "shares common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues." *League of United Latin Amer. Citizens, Council No. 4434 v. Clements,* 986 F.2d 728, 744 (5th Cir. 1993) (*LULAC II)*. "A showing that a significant number of minority group members usually vote for the same candidates is one way of proving the political cohesiveness necessary to a vote dilution claim." *Gingles,* 478 U.S. at 56. Political cohesion within the affected minority group can be shown by statistical evidence or unrebutted testimony of persons familiar with the minority group in question. *See id.* (citing *Monroe v. City of Woodville,* 897 F.2d 763, 764 (5th Cir. 1990), and *LULAC II,* 986 F.2d at 743-44).

To prove political cohesiveness, "plaintiffs must introduce evidence that the minority candidate [or proposition] is … minority-preferred." *Rodriguez v. Harris Cty., Tex.,* 964 F. Supp. 2d 686, 754-56 (S.D. Tex. 2013), *aff'd sub nom., Gonzalez v. Harris Cty., Tex.,* 601 F. App'x 255 (5th Cir. 2015) (citing *Gingles,* 478 U.S. at 67-70). Evidence of racially polarized voting can, but does not automatically, establish political cohesiveness among a minority group. *LULAC II,* 986 F.2d at 744, n.5 ("If, in a certain community, white citizens vote only for candidates of type A,

while minority citizens are split in voting for candidates of types X, Y and Z, then there would be evidence of racially polarized voting … but [not] evidence of minority political cohesiveness.").

While the Fifth Circuit has held that Blacks and Hispanics can constitute a politically cohesive minority group, the plaintiff "must prove that the minorities 'actually vote together' in a cohesive manner; otherwise their claim will fail." *Perez,* 250 F. Supp. 3d 123, 137 (citing *Campos,* 840 F.2d at 1244-45). While Plaintiffs plead that Black and Hispanic voters in District 1 are politically cohesive, *see* Compl. at p. 3, they fail to plead *any* statistical evidence or existing or anticipated facts to support their assertion that Blacks and Hispanics in District 1 are politically cohesive. *See* Complaint, *passim*. The only support Plaintiffs provide to support their claim is an unsupported assertion that voting in McKinney is racially polarized because no minority candidate has ever been elected outside of District 1. *See id*., ¶¶ 1, 52-56.

Plaintiffs' purely anecdotal evidence does not, however, adequately plead that Blacks and Hispanic voters in District 1 are politically cohesive. First, Plaintiffs assert that a Black at-large City Council candidate in 2017 garnered 18.01% of the vote. *See* Complaint, ¶ 53. Yet, according to Plaintiffs' 2010 Census data, Blacks and Hispanics make up 29.43% of the citywide population. *See* Compl., ¶ 27. Second, the Hispanic City Councilmember cited by Plaintiffs (Councilmember Garza) was elected in 2002, eight years before the demographics provided in the 2010 Census. *See* Compl. at p. 14. In her initial election, Councilmember Garza defeated the former District 1 Black City Councilmember, also cited by Plaintiffs, by a margin of 51% to 49%.[9] Assuming Plaintiffs' 2010 Census data closely resembles District 1's demographics in 2001, some minority group members clearly voted for different candidates. *See* Compl., ¶ 31.

---

[9] *See* Accumulated Total, Combined Election Day and Early Ballots, City of McKinney Runoff Election June 2, 2001, Runoff Election, available at https://www.collincountytx.gov/elections/election_results/Archive/2001/060201/June 2,2001 Early Voting and Election Day Statement of Votes Cast.txt.

3.     **The *Gingles* Factors, if present, do not impede the minority group's participation in the political process and their ability to elect their representatives**

Even if Plaintiffs could sufficiently plead and show all three *Gingles* factors, the factors still must result in impeding the minority group's participation in the political process and the election of representatives of their choice. "Of course, as we reflected in *Voinovich* and amplify later in this opinion, 'the *Gingles* factors cannot be applied mechanically and without regard to the nature of the claim.'" *Johnson,* 512 U.S. at 1007. While the presence of all three factors is generally necessary to plead a § 2 claim, the presence of all three factors alone is not sufficient to prove such a claim. *Id.* at 1011. The factors must still result in impeding the minority group's participation in the political process and the election of representatives of their choice. *Chisom v. Roemer,* 501 U.S. 380, 394-95 (1991). Plaintiffs do not allege that the affected minority group did not participate in electing Shemwell. *See* Compl., *passim*. Based upon the June 10, 2017, McKinney City Council District 1 election results, and the demographic information provided by Plaintiffs, the affected minority group was presumably able to elect the representative of their choice.[10]

Plaintiffs similarly do not allege that the affected minority group did not participate in voting on the proposed home-rule charter amendments revising the City Councilmember recall process. *See* Compl., *passim*. Based upon the May 4, 2019, McKinney Home-Rule Charter Amendments election results and the demographic information provided by Plaintiffs, the affected minority group presumably voted to adopt the home-rule charter amendments.[11] Further, it cannot be disputed that the affected minority group voted in the Shemwell recall election.[12] And based

---

[10] *See* Election Summary Report, Runoff Elections, June 10, 2017, available at GEMS ELECTION SUMMARY REPORT (collincountytx.gov); Complaint, ¶ 31.

[11] *See* Statement of Votes Cast, General and Special Elections, May 4, 2019, available at https://www.collincountytx.gov/elections/election_results/Archive/2019/05042019/May%204,%202019%20Combined%20Election%20Day%20and%20Early%20Voting%20Statement%20of%20Votes%20Cast.pdf ; Complaint, ¶ 31.

[12] *See* Statement of Votes Cast, Final Results, Collin County, Texas November 3, 2020, available at: November 3, 2020 Combined Statement of Votes Cast.pdf (collincountytx.gov).

upon the November 3, 2020, recall election results and the demographic information provided by Plaintiffs, the affected minority group presumably voted to recall Shemwell as well. *See id.*; Compl., ¶ 31. Black and Hispanic voters in District 1 were not disenfranchised and their votes were not diluted. Plaintiffs have failed to plead and cannot prove a § 2 vote-dilution claim.

### C. Conclusion

The recall election has occurred and Shemwell has been recalled by voters from his own District and citywide; thus, no live, justiciable controversy remains. The matter is not ripe (there is no recall election to be enjoined) and the matter is now moot (the recall election has occurred). Further, Plaintiffs have failed to plead the requisite § 2 vote-dilution claim factors required under *Gingles*. For the reasons presented herein and in previous briefing, this case should be dismissed.

Respectfully submitted,

/s/ Kent S. Hofmeister
**Kent S. Hofmeister**
State Bar No. 09791700
khofmeister@bhlaw.net
**Michael L. Martin**
State Bar No. 24108956
mmartin@bhlaw.net
**BROWN & HOFMEISTER, L.L.P.**
740 East Campbell Road, Suite 800
Richardson, Texas 75081
(214) 747-6100 (Telephone)

*Attorneys for Defendant*
*City of McKinney, Texas*

### CERTIFICATE OF SERVICE

I certify that on December 2, 2020, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas, Sherman Division, using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.

/s/ Kent S. Hofmeister
**Kent S. Hofmeister**