UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LA'SHADION SHEMWELL, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-687-SDJ |
| | § | |
| CITY OF MCKINNEY, TEXAS | § | |

**MEMORANDUM OPINION AND ORDER**

Now-former McKinney city councilmember La'Shadion Shemwell, along with fellow McKinney voter Debra Fuller,[1] filed this lawsuit against the City of McKinney ("the City"). Plaintiffs allege pursuant to 42 U.S.C. § 1983 that the City Charter's recall-election provisions violate the Fourteenth and Fifteenth Amendment to the Constitution. They also allege that the provisions violate Section 2 of the Voting Rights Act. Specifically, Plaintiffs claim that Section 146 of Part I, Chapter 18 of the City Charter, which allows all eligible voters in McKinney to vote in the recall elections of city councilmembers regardless of whether the city councilmember was originally elected by the city at large or by a single-member district, unlawfully dilutes the vote of Black and Latino voters in McKinney.

Before the Court is Defendant's Motion to Dismiss Under Rule 12(b)(6). (Dkt. #3). The Court raised issues of mootness and the sufficiency of Plaintiffs' allegations as to their Voting Rights Act claim sua sponte and ordered the parties to

---

[1] Florine Henry was also a plaintiff in this action, but she voluntarily dismissed her claims against the City under Federal Rule of Civil Procedure 41(a)(1)(A)(i) on December 9, 2020.

1

file supplemental briefs. (Dkt. #14). The City, in its supplemental brief, contends that Plaintiffs' claims are moot and that Plaintiffs have failed to adequately plead a claim under the Voting Rights Act. The Court thus construes the City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as also moving for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. Having considered the motion, the subsequent briefing, and the governing law, the Court concludes that the City's motion should be **GRANTED**.

## I. BACKGROUND

The City of McKinney is governed through its City Charter and by its City Council. McKinney's City Council is comprised of seven members: a mayor who is elected by the city at large; two councilmembers who are elected by the city at large; and four councilmembers elected by single-member districts. Shemwell, who is Black, and Fuller, a Latina, are McKinney voters who reside in District 1. Shemwell also served as the city councilmember for District 1 before McKinney voters recalled him from that position in November 2020.

In May 2019, McKinney residents voted to amend a number of provisions in the City Charter related to the process for initiating and voting in recall elections. Relevant here, Section 146 was amended to clarify that recall elections are conducted citywide, regardless of whether an elected official served in an at-large seat or represented a single-member district.[2]

---

[2] The full text of Section 146 of the City Charter now reads as follows:
The City Secretary shall at once examine the recall petition and, if the City Secretary finds it sufficient and in compliance with the provisions of this

2

In December 2019, the requisite number of McKinney voters petitioned to recall Shemwell, and the City Council then scheduled a recall election for May 2, 2020. In January 2020, Shemwell filed a lawsuit in this Court, asserting the same claims he does here and seeking an injunction enjoining the City from continuing with his recall election. On March 13, 2020, Shemwell voluntarily dismissed that lawsuit.

Later that month, the City postponed Shemwell's recall election until November 3, 2020, due to the COVID-19 public-health emergency. Six months after dismissing his first lawsuit and less than two months before his scheduled recall election, Shemwell filed this suit, this time with additional plaintiffs, asserting the same claims he asserted previously—namely that the citywide nature of recall elections dilutes the votes of McKinney's Black and Latino voters in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the Constitution. They also allege that the majority of the voting-age residents in McKinney are white, while the majority of voting-age residents in District 1 are either Black or Latino. Thus, according to Shemwell and Fuller, the fact that the City Charter permits residents of McKinney at large to vote in elections seeking the recall

---

Chapter of the Charter, the City Secretary shall within five (5) days or at the next regular City Council meeting, whichever is later, submit it to the City Council with its office's certificate to that effect and notify the officer sought to be recalled of such action.

If the officer whose removal is sought does not resign within five (5) days after such notice, the City Council shall thereupon order and fix a date for holding a *citywide* recall election according to State law.

MCKINNEY, TEX., CODE OF ORDINANCES, part I, ch. 18, § 146 (emphasis added).

of councilmembers elected by District 1 causes white voters to dilute the voting power of the Black and Latino majority in District 1. And this alleged dilution of voting power, Shemwell and Fuller claim, deprives Black and Latino voters of their ability to elect or recall a councilmember of their choosing.

Shemwell and Fuller originally purported to seek preliminary injunctive relief enjoining the City from conducting Shemwell's recall election. But they again ultimately abandoned that pursuit. And on November 3, 2020, a majority of McKinney voters—including a majority of those who voted in District 1—voted to recall Shemwell from his position on the City Council.[3]

The City now seeks dismissal of Plaintiffs' claims on the grounds that the claims are moot in light of the completed recall election and that Plaintiffs have failed to state a claim upon which relief can be granted.

## II. DISCUSSION

The City argues that Plaintiffs' interest at stake in this litigation was the prevention of the alleged dilution of their votes in Shemwell's recall election. Because the recall election has passed and Plaintiffs only seek prospective declaratory relief, the City argues that Plaintiffs no longer have an interest to vindicate in this litigation. The Court agrees.

---

[3] In fact, "District 1 voted . . . in favor of (1) increasing the time to circulate, and reducing the number of signatures required for, a recall petition by a margin of 58.9% (476 votes) to 41.1% (331 votes); (2) clarifying that a recall of a City Council member should be conducted in a citywide election by 78.5% (632 votes) to 21.5% (173 votes); *and* (3) recalling Councilmember Shemwell by a margin of 66.24% (6,191 votes) to 33.76% (3,156 votes)." (Dkt. #15 at 1, n.1) (emphasis added). Plaintiffs do not dispute these facts.

For a federal court to exercise jurisdiction under Article III of the Constitution, a plaintiff's interests at stake in a lawsuit must remain through the duration of the litigation. *See Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F.App'x 336, 339 (5th Cir. 2018) (citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). Generally, any occurrence that eliminates the plaintiff's interest during the litigation renders the action moot and deprives a federal court of subject-matter jurisdiction. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009). "Many claims that implicate election laws . . . fall within an exception to the mootness doctrine for the class of controversies capable of repetition, yet evading review." *Id.* (cleaned up). Under this exception, a claim is not moot if "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)). Plaintiffs bear the burden of proving both prongs. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). And a "'mere physical or theoretical possibility' is not sufficient to satisfy [the second] prong of the exception." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)).

In *Smith v. Winter*, the Fifth Circuit considered a claim that a Mississippi recall statute was unconstitutional after the recall election involving local officials had been completed. 782 F.2d 508, 510 (5th Cir. 1986). In considering whether a reasonable expectation existed that the local officials would be subjected to the same

allegedly unconstitutional action again, the court emphasized that "there is no allegation or showing otherwise that [the officials] will be subjected to another recall petition." *Id.* at 510 (citing *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). The court thus implicitly rejected the notion that the recent use of the recall provisions showed they were likely to be used again. *See id.* ("Although all public officials are subject to recall under the Mississippi statute, there is no reason to believe from the record that appellants are more likely to face a recall election today than are any other public officials."). Though *Winter* is candidate-focused rather than voter-focused, the Fifth Circuit made clear that recall provisions do not meet the "capable of repetition, yet evading review" exception simply because recall-election provisions exist. Rather, there must be some indication that the provisions are likely to be used.

In *Hall v. Secretary of State of Alabama*, the Eleventh Circuit considered a candidate's request for a declaratory judgment that a ballot access requirement for a completed special election for a U.S. House seat was unconstitutional. 902 F.3d 1294, 1296–97 (11th Cir. 2018). The court held that the case was moot because there was no "reasonable expectation that Hall will have [another] opportunity . . . to run or vote in a special election for a U.S. House seat in Alabama." *Id.* at 1298. In reaching this conclusion, the court explained that the last special election for the U.S. House seat in question was eighty-three years prior and that a special election for *any* U.S. House seat in Alabama has occurred "only about every twenty years." *Id.* at 1299. Thus, the court concluded that "[t]he issue presented in this case will therefore recur,

if at all, with far less frequency than . . . [in] other cases that involve challenges to election laws as applied during regular election cycles." *Id.*

Here, Shemwell and Fuller must demonstrate a "reasonable expectation" that (1) there will be another McKinney City Council recall election and (2) that such a future recall election would be for the councilmember in District 1. Both showings are necessary to establish that the group of McKinney voters subjected to the alleged vote dilution in the Shemwell recall would be subject to the same alleged vote dilution in the future. In their attempt to meet this burden, Shemwell and Fuller assert that "[t]here will be elections held in McKinney District 1 every few years, and every few years the issue will continue to arise as to whether a representative from a majority-minority district is to be recalled city-wide[.]" (Dkt. #16 at 6). Plaintiffs' argument is unavailing.

While *regular* elections will occur every few years, it is highly speculative that another *recall* election of the District 1 councilmember, will occur "every few years"— or even once in the foreseeable future. As Plaintiffs themselves admit, "Shemwell's recall election is the first and only recall effort ever launched" in McKinney history. (Dkt. #1 ¶ 4). A recall election for any seat, at-large or single-district, had never before occurred in the Council's more than sixty-year history.[4] Just as the officials in *Winter* were no more likely to be subject to a future recall election because they had just been

---

[4] McKinney code indicates the City Council has been in place since at least 1959. *See* MCKINNEY, TEX., CODE OF ORDINANCES, part I, ch. 38, § 38-3 (Per a 1959 ordinance, "The city council shall provide in the resolution calling general elections for the posting of a notice thereof by the chief of police at a public place in each election precinct.").

subject to one, Plaintiffs here are no more likely to face alleged vote dilution in a hypothetical future recall of a District 1 councilmember simply because they have just experienced such a recall election. And as in *Hall*, "[t]he issue presented in this case will therefore recur, if at all, with far less frequency than . . . [in] other cases that involve challenges to election laws as applied during regular election cycles." 902 F.3d at 1299.

For these reasons, the notion that another recall election will occur in McKinney in the future is a "mere physical or theoretical possibility" insufficient to satisfy this prong. *Dardenne*, 595 F.3d at 217. Further, the suggestion that such a theoretical future recall would be for the District 1 councilmember is an even more remote possibility. And "[t]he remote possibility that an event might recur is not enough to overcome mootness." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Shemwell and Fuller's claims thus fall outside the exception for cases "capable of repetition, yet evading review."[5] This case is moot.

---

[5] Plaintiffs' own handling of this and related litigation is the primary reason this case evades review. As the Court noted earlier, Shemwell twice abandoned his pursuit of injunctive relief *before* the recall election in question occurred—giving the Court no opportunity to consider the propriety of injunctive relief or the merits of the claim. As the City correctly states, "At no time . . . has any Plaintiff requested and participated in an expedited, evidentiary hearing on the issue of injunctive relief related to the recall election." (Dkt. #3 at 22).

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the City's Motion to Dismiss, (Dkt. #3), is **GRANTED** and that Plaintiffs La'Shadion Shemwell's and Debra Fuller's claims are **DISMISSED without prejudice**.

**So ORDERED and SIGNED this 27th day of September, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE