```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                          SHERMAN DIVISION

 3    LA'SHADION SHEMWELL, et al,      §
                                       §
 4                                     §
                       Plaintiffs,     §   Court of Appeals No.:
 5                                     §   21-40798
             vs.                       §
 6                                     §   Case No.:
                                       §   4:20-cv-00687-SDJ
 7    CITY OF MCKINNEY, TEXAS,         §
                                       §
 8                     Defendant.

 9

10         TRANSCRIPT OF MOTION HEARING PROCEEDINGS
            BEFORE THE HONORABLE SEAN D. JORDAN
11              UNITED STATES DISTRICT JUDGE

12         Thursday, October 22, 2020; 9:37 a.m.
                      Plano, Texas
13
      APPEARANCES OF COUNSEL:
14    (Continued on page 2.)

15    FOR THE PLAINTIFFS:
      (Via videoconference)
16
          Blerim Elmazi
17        MERRITT LAW FIRM, LLC
          1910 Pacific Avenue
18        Suite 8000
          Dallas, Texas 75201
19
          Shayan Elahi
20        SHAYAN ELAHI P.A.
          P. O. Box 630827
21        Irving, Texas 75063

22        *****************************************

23              GAYLE WEAR, RPR, CRR
            Federal Official Court Reporter
24              7940 Preston Road
              Plano, Texas 75024
25               214.872.4867
```

```
 1    FOR THE DEFENDANT:

 2          Robert Franklin Brown
            Kent Stanley Hofmeister
 3          Michael Lee Martin
            BROWN & HOFMEISTER - Richardson
 4          740 E. Campbell Road, Suite 800
            Richardson, Texas 75081
 5
            William W. Krueger, III
 6          THE LAW OFFICES OF WILLIAM W. KRUEGER, III, PC
            2097 N. Collins Boulevard, Suite 150
 7          Richardson, Texas 080

 8    ALSO PRESENT:

 9          Daniel Basham, The Law Offices of William W. Krueger
            Kristi Kneedler, The Law Offices of William W. Krueger
10
            George Fuller, Mayor of the City of McKinney
11          (Via videoconference)

12          Mark Houser, City Attorney
            (Via teleconference)
13

14
                              *    *    *
15

16

17

18

19

20

21

22

23

24

25
```

```
1   October 22, 2020                                9:37 a.m.

2                        ---o0o---

3                   P R O C E E D I N G S

4                        ---o0o---

5            THE COURT:  We're here this morning on cause number

6   4:20-cv-687, La'Shadion Shemwell versus the City of McKinney.

7            Would counsel, please, make their appearances for

8   the record.

9            MR. ELAHI:  Shayan Elahi for the plaintiff.  Good

10  morning, Your Honor.

11           MR. ELMAZI:  Good morning, Your Honor.

12  Blerim Elmazi for the plaintiffs.

13           MR. HOFMEISTER:  I'm Kent Hofmeister on behalf of

14  the City of McKinney.

15           THE COURTROOM DEPUTY:  I don't think your mic is

16  on.

17           THE COURT:  You have to make sure it's flashing

18  green, Mr. Hofmeister.

19           MR. HOFMEISTER:  There we go, all right.  Better,

20  all right.

21           Kent Hofmeister representing the City of McKinney,

22  defendant.

23           MR. BROWN:  Robert Brown on behalf of the City of

24  McKinney.

25           MR. MARTIN:  Michael Martin on behalf of the City
```

1    of McKinney.

2           MR. KRUEGER:  Bill Krueger on behalf of the City of

3    McKinney.

4           THE COURT:  All right.  Thank you, counsel.  Have

5    we covered all lawyers?

6           MR. HOFMEISTER:  I think so.

7           THE COURT:  And I think I understand we have maybe

8    at least one other person on the line; is that the City's

9    mayor?

10          MR. HOFMEISTER:  George Fuller, the mayor of the

11   City of McKinney, I believe is also on the line, as --

12          MR. FULLER:  Yes.

13          MR. HOFMEISTER:  -- the city -- pardon me.  Did

14   you -- was that recorded?

15          (Court reporter nodded in the affirmative.)

16          MR. HOFMEISTER:  You got that, okay.

17          The mayor is online.  Mark Houser, the city

18   attorney for the City of McKinney, is also on the line.

19          THE COURT:  All right.  Thank you, counsel.

20          Plaintiffs, it's just the two of you; right?  Just

21   the attorneys; is that correct?

22          MR. ELMAZI:  Yes, Your Honor.

23          THE COURT:  All right.  So we're here today on the

24   defendant's motion to dismiss.  But I just had one matter I

25   want to address that has to do with the relief plaintiffs are

1      seeking before we proceed on the motion to dismiss, and that

2      is to simply confirm that the plaintiffs are not seeking

3      injunctive relief concerning a recall election scheduled for

4      November 3, 2020.

5            The plaintiffs, in your prayer for relief that was

6      part of your complaint filed on September 13, 2020, do ask

7      that the Court enjoin the recall election.  However, as noted

8      in the Court's order of October 6, there was no temporary

9      retraining order filed, there has been no preliminary

10     injunction filed by the plaintiffs.  And in the Court's

11     October 6 order, the Court did make clear that if you were

12     seeking injunctive relief regarding this November 3, 2020,

13     recall election, you needed to file a preliminary injunction

14     by October 9.  No preliminary injunction has been filed.

15           So I just want to confirm with plaintiffs' counsel

16     that plaintiffs are not seeking injunctive relief regarding

17     the recall election on November 3, 2020.

18           MR. ELAHI:  Yes, Your Honor, that is correct.  At

19     this point -- (inaudible/indecipherable)

20           THE COURT:  Mr. Elahi, I think we're having some

21     problem with your sound.  It may be that you need to get

22     closer to your microphone, and you might want to speak up a

23     bit and maybe speak a bit slowly.  But we really couldn't

24     hear anything you said.  I'm sorry.

25           MR. ELAHI:  No, Your Honor, I apologize.  Let me

1    start again, Your Honor.  Is this better, Your Honor?

2              THE COURT:  It's better.  I think you might get a

3    little bit closer, if you can, and speak slowly.

4              MR. ELAHI:  Your Honor, I don't want to scare

5    people with the video.  Maybe I should --

6              THE COURT:  That's good.  Where you're just at now,

7    I think you're coming through pretty clearly.

8              MR. ELAHI:  Okay, Your Honor.

9              THE COURT:  I think we just lost Mr. Elahi's

10   signal.

11             Mr. Elmazi, do you want us to wait for your

12   co-counsel to come back?

13             MR. ELMAZI:  Yes, Your Honor, if you don't mind.

14             THE COURT:  That's not a problem.

15             MR. ELAHI:  Your Honor, can you hear me?  I'm

16   sorry, the screen froze.  Were you able to hear me, Your

17   Honor?

18             THE COURT:  No.  I think what happened is the

19   screen froze -- and I couldn't tell if we lost your signal --

20   it went black.  But you're going to have to repeat your

21   response to my question.

22             MR. ELAHI:  Yes, Your Honor.  We are not seeking

23   injunctive relief, Your Honor, temporary injunctive relief,

24   regarding the election on November 3rd.  That is correct.

25             THE COURT:  All right.  Thank you, Mr. Elahi.

 1            So we are here on the defendant's motion to

 2   dismiss.  I just want to let everyone know that I have read

 3   all of the paperwork, and that includes, obviously, the

 4   complaint, the dismissal motion, the response to the

 5   dismissal motion that was filed by the plaintiffs.  But we're

 6   here for argument on the motion, and we'll let the defense

 7   counsel proceed, and then we'll hear from the plaintiffs.

 8            And, by the way, Mr. Hofmeister, when you're

 9   addressing the Court, it's your choice.  If you'd like to

10   pull your mask down, you can.  If you're more comfortable

11   keeping it on, you can do that, too.

12            MR. HOFMEISTER:  I think I would be more

13   comfortable taking it off.

14            But before I begin, Your Honor, if I may, we have

15   a -- we have printed out copies of those documents -- I'm

16   going to come and get those in just a second, yeah --

17   documents that we ask the Court to take judicial notice of in

18   the footnotes in the motion to dismiss.  And if I may have

19   permission to approach so that the Court could have those for

20   its reference.

21            THE COURT:  Certainly.

22            MR. HOFMEISTER:  Thank you.  And we have not had

23   the opportunity, since opposing counsel is not here in the

24   courtroom this morning, to give them a copy of that, but we

25   can certainly do that.

```
1                    As I said, the documents that we're referring to
2       are documents that were identified in the motion to dismiss,
3       and they were -- there was a link provided so that access to
4       the documents could be had.
5                    If I may I approach, Your Honor?
6              THE COURT:  Yes.
7                    (Documents provided to the Court.)
8              MR. HOFMEISTER:  Thank you.
9              THE COURT:  And these documents, Mr. Hofmeister,
10      they -- the reason that you provided links is they are public
11      records that are available, I take it, on the City's website.
12             MR. HOFMEISTER:  That is correct, either on the
13      City's official website or the State of Texas official
14      website.  They are, for instance, copies of Council -- City
15      Council minutes.  The reference to the State of Texas website
16      has to do with early voting starting on October the 13th,
17      things again that are public knowledge and available to
18      everyone.
19             THE COURT:  All right.  Thank you.  And you can
20      proceed.
21             MR. HOFMEISTER:  Thank you, Your Honor.
22                   Kent Hofmeister, on behalf of the City of McKinney.
23      We're here this morning, as the Court has noted, on the City
24      of McKinney's motion to dismiss.
25                   We have been here before.  As the Court will
```

1    recall, this is the second time a case has been brought by

2    plaintiff La'Shadion Shemwell against the City of McKinney on

3    the same -- basically, the same claims if not the identical

4    claims.

5           Originally, the first suit was brought in January

6    of this year.  A TRO hearing was held that was rescheduled

7    for a preliminary injunction.  No injunctive relief was ever

8    pursued by the plaintiff.  At that point it was solely

9    Mr. Shemwell, it was not any additional plaintiffs.  But no

10   injunctive relief was pursued and, as a result, no injunctive

11   relief was granted.  And in March of this year, less than two

12   months after the suit was filed, the case was voluntarily

13   dismissed.

14          Then six months later, September of this year, last

15   month, plaintiff filed this lawsuit.  But now we have two

16   additional plaintiffs in the case, the Florine Henry and

17   Debra Fuller.

18          So the claims made in this case the Court is

19   familiar with, but just to review some basic elements of

20   this, the plaintiff -- plaintiff Shemwell here is a

21   sitting City of McKinney City Council member.  He represents

22   District 1, a single-member district.  He is the only

23   African-American Council member sitting on the Council at

24   this time.  He was elected in 2017, and his term is a

25   four-year term and is set to expire in May of next year,

1   2021.

2          Just briefly, a little bit of background and what

3   is alleged in the complaint is that there was a charter

4   amendment election in May of 2019, and the complaint alleges

5   that that was a result of a voter-initiated petition drive.

6   The result of that election was that the charter was amended

7   at that time, and what that meant was that there were fewer

8   names that were needed for a recall petition.

9          There was time -- or, rather, the time to collect

10  signatures for a petition was increased from 30 to 45 days,

11  and that any recall election for a Council member would be

12  citywide.  That was a clarification of the charter.

13         Then in December of 2019, this past December, a

14  recall petition was submitted to the City Council for the

15  recall of Councilman Shemwell.  That petition was then

16  certified by the City Secretary, Empress Drane, on January

17  the 7th of 2020.

18         And the way the charter is set up, what it provides

19  is that once the subject of a recall election has been

20  notified that he or she is the subject of that recall, then

21  he -- that person, that Council member, has five days within

22  which to resign.  That did not happen here.

23         And so under the charter and under state law, the

24  Council then proceeded by adopting an ordinance that called

25  for a recall election.  And that recall election was

1    originally scheduled for May of 2020, and that was going to

2    be a citywide recall election under the newly amended

3    charter.

4          As we all know, shortly thereafter, March of this

5    year, the entire country was hit with the COVID-19 pandemic,

6    and that impacted everything, including the political aspects

7    of the country, of the state, of the towns and cities.  And

8    that was true of the City of McKinney as well.

9          Governor Abbott issued a proclamation in the middle

10   of March in which he encouraged all cities across the state

11   to postpone or move their elections from May to November the

12   3rd, and that's exactly what the City of McKinney has done.

13         So right now, the position we are in is that there

14   is a recall election scheduled for November the 3rd for --

15   calling for the recall of, the removal of, or not -- of

16   Councilman Shemwell, but it's a matter that is going to be

17   left to the voters of the City of McKinney.

18         So the issues that we have here and the issues for

19   the Court to decide today are twofold, essentially.  The

20   first one is brought under Section 1983, 42 U.S.C. § 1983,

21   and the Fourteenth and Fifteenth Amendments.  The plaintiffs

22   here point to the statute Section 1983, which provides that

23   it is unlawful for to deprive any person of his or her

24   constitutional rights or protections under color of state

25   law.

1              And it's important to note here that what we're

2       dealing with is the City of McKinney.  It's a governing -- I

3       mean, it's a governmental body, it is not an individual --

4       it's not an individual in an official or an individual

5       capacity.  So when we talk about liability attaching to a

6       city, we have to talk about what the municipal policy maker

7       is.

8              And the law in this area is well established, it

9       goes back to the *Monell* case, which interpreted governments

10      as being persons for purposes of the statute, and *Monell* and

11      its progeny -- you go through *Praprotnik* and *Bryan County* and

12      those cases -- that establish that in order for a city to be

13      liable, a governmental entity to be liable, the plaintiff

14      must plead and prove that the -- that the injury visited upon

15      the plaintiff was the result of some sort of a policy, a

16      municipal policy, practice, custom, or usage.

17             And in this case we don't have -- we don't have

18      that kind of nexus that the City visited this injury upon the

19      plaintiffs.  What we have is a City Council that was required

20      to submit to the voters to decide whether or not the

21      councilman should be recalled.  Were they the so-called

22      moving force behind the action taken?  Our position is no,

23      that the City was not the moving force behind this.

24             What they did was what they were required to do by

25      law, and that is once they were -- once they were

1    presented -- once the City Council was presented with a

2    petition, that petition, after the five-day period lapse,

3    then the Council, the City, had to go ahead and schedule the

4    recall election.

5         And now we are in a position where roughly two

6    weeks from today, the voters will decide whether or not

7    Councilman Shemwell will be recalled and will either stay as

8    a sitting member of the City Council or be removed as a

9    member of the City Council.

10        But it's important to note that it's a municipal

11   policy maker.  It is -- the first is, rather, the ultimate

12   decision maker, and that is the governing body for the City.

13   And in this case, that causal connection is broken by the

14   voters making the decision, as the City is required to

15   present it to the voters to make that decision.

16        A municipal policy maker is not an individual

17   acting either in his or her individual or official capacity.

18        Yes, Your Honor.

19        THE COURT:  As I understand your argument, it's

20   basically that the plaintiff has to allege an injury that is

21   the result of some sort of a City policy, or ordinance, or

22   action on behalf of the City, as opposed to something that's

23   an action on behalf of the voters --

24        MR. HOFMEISTER:  That's correct.

25        THE COURT:  -- is that correct?

1          MR. HOFMEISTER:  That is correct, Your Honor.

2          THE COURT:  Okay.

3          MR. HOFMEISTER:  The second cause of action that

4  has been presented by the plaintiffs is under the Voting

5  Rights Act, Section 2.  And as the Court noted before, they

6  originally sought injunctive relief.  The Court, in its order

7  of October the 6th, ordered plaintiffs to file a motion for a

8  preliminary injunction if indeed that was their intent to

9  pursue that injunctive relief.  No motion was filed by the

10  9th.  As we heard earlier this morning, the plaintiffs have

11  withdrawn any sort of request for injunctive relief.  So that

12  issue is not before the Court this morning or at all.

13          Now, what the plaintiffs are saying is that under

14  the Voting Rights Act, that the citywide recall election

15  process was motivated in part by the City's racial animus or

16  discriminatory motive, and it is being maintained to

17  purposely dilute the plaintiffs of their voting strength and

18  to remove Councilman Shemwell from his Council seat.

19          But as we've already stated, this is not an action

20  by the City Council.  This is, rather, a matter where the

21  Council was required by law to present it to the voters, and

22  the voters will make that decision.

23          Plus, we don't know yet what the result of that

24  election will be, so we don't even know whether there will be

25  an injury, the one that apparently is feared by the

1    plaintiffs, and particularly Councilman Shemwell, that he

2    might be removed as a result of the election.

3         We would point the Court to the decision, pardon

4    me, that we noted in the motion to dismiss and also in our

5    reply.  And I assume the Court has seen the reply that we

6    filed.  Yes?

7         THE COURT:  Yes, I have.

8         MR. HOFMEISTER:  Okay.  All right.  And we

9    revisited the authorities in part there, and particularly

10   this one case, and that was *McBride v. The City of Jasper*.

11   And in that situation, you had two council members who were

12   subject to the recall because they had appointed a police

13   chief and the voters were upset with that result.

14        And the Court there, in looking at that, said that

15   the recall procedures were provided by the city's charter.

16   It's very much like what we have here with the City of

17   McKinney and in this case.  But the recall procedures

18   provided by the charter allowed the city's qualified voters,

19   on an at-large basis, to subject the city council member

20   representing a single-member district to a recall election.

21        The Court there importantly noted that courts are

22   generally reluctant -- and those are the words, that's the

23   word it used, "reluctant" -- to apply the Voting Rights Act

24   to the petition process, and it particularly noted three

25   cases, federal court cases, from the Ninth, the Tenth, and

1    the Eleventh Circuits, *Padilla*, *Montero*, and *Delgado*, that

2    have held that in fact the Voting Rights Act does not apply

3    to voter-initiated petitions.

4         *McBride* also noted that the plaintiffs there had

5    not cited any authority that a city charter violated the act

6    by allowing citizens, on an at-large basis, to subject

7    elected representatives from a single-member district to a

8    recall election.  And because there was no authority provided

9    by the plaintiffs there to that effect, the *McBride* court

10   held that the plaintiffs' claims failed because the issue was

11   unresolved in the Fifth Circuit.

12        So I think we find ourselves in, basically,

13   certainly a similar situation, if not virtually identical

14   situation, in this case.

15        THE COURT:  Well, there is -- but there is a

16   notable distinction, is there not, between the *McBride* case

17   and indeed the cases it relies upon and this case because

18   there is a distinction between the petition process and then

19   the actual recall vote itself.  And *McBride* is speaking to

20   the issue of a petition, and that the cases from the Circuits

21   it relies upon are looking to the issues of petitions that

22   are being initiated by voters or others rather than by a

23   state entity.

24        But here, it seems part -- at least part of the

25   plaintiffs' complaint is about the fact that when the recall

1    count vote -- I'm sorry, the recall vote itself is made, that

2    vote will not be just by the members of District 1 for

3    Mr. Shemwell, but will be citywide.  And I think that was an

4    issue that was noted in *McBride*, and the Court decided it was

5    not an issue because in *McBride*, in the *Jasper* case, the vote

6    was going to be limited to the voters in that single-member

7    district.  In other words, the recall vote in that case was

8    going to be limited to the members of the district and it was

9    not going to be an at-large vote.

10           And in fact, the Beaumont Court opinion, the Ninth

11   Circuit Court of Appeals opinion from Texas, when it

12   addressed that issue, noted in response to the allegation

13   that it would violate the Voting Rights Act to allow the

14   citywide vote, the Beaumont Court of Appeals noted that it

15   would only be a vote within the single-member district.

16           You can let me know if I've got any of that wrong.

17   But that's my understanding of at least what appears to be a

18   notable distinction between *McBride*, the Beaumont Court of

19   Appeals opinion that underlies *McBride*, and the three Circuit

20   Court opinions that are relied upon in *McBride* which

21   concerned petitions -- the petition process and in fact

22   whether petitions needed to be, for example, in English and

23   Spanish, et cetera.

24           Can you address that distinction here?  It looks

25   like this is a bit different than *McBride*.

1        MR. HOFMEISTER:  It is a distinction, Your Honor.

2    But as the court in *McBride* indicated, there is no authority,

3    or at least the status of the law in the Fifth Circuit is

4    unresolved.  And so for that reason, it decided that it would

5    not -- it would not -- it would dismiss the claims of the

6    plaintiff in that case.

7        So I think again we're back to where we are in this

8    matter, and the claims for the -- the plaintiffs' claims

9    should be dismissed for failure to state a claim.

10       THE COURT:  Yeah.  I think we'll hear from the

11   plaintiffs --

12       MR. HOFMEISTER:  Sure.

13       THE COURT:  -- on that as well, but I think that

14   issue at least makes it not identical to *McBride*, and it's a

15   notable distinction, and those cases that *McBride* relied

16   upon.

17       And so another question I had for you is whether

18   there is any other case law -- it can be from Texas, it can

19   be from around the country -- that you think may be

20   applicable in this sort of recall election context.  Because

21   there is dicta in *McBride* going both ways.

22       MR. HOFMEISTER:  Correct.

23       THE COURT:  Some of the dicta in *McBride* I think is

24   counter to your position.  Some of the dicta in *McBride* talks

25   about the judge, he doesn't really need to address the issue,

1    but not necessarily being persuaded that the Voting Rights

2    Act applies to recall elections.

3             Is there any other precedent from around the

4    country that you can cite?

5             MR. HOFMEISTER:  Let me just say this before I

6    respond to that.  And that is the dicta in *McBride* that might

7    be favorable to plaintiffs was really regarding a

8    hypothetical, it was the -- a violation might occur if, but

9    it had nothing to do the with the -- I mean, that court never

10   ruled on that issue, and that issue was never before the

11   Court upon which to rule.  So for that reason, I think that

12   that dicta is really inapposite to our situation.

13            As far as having any other case law to present to

14   the Court this morning --

15            THE COURT:  Well, let me read to you some other

16   dicta that I think goes against your position --

17            MR. HOFMEISTER:  All right.

18            THE COURT:  -- and this is in the conclusion.  The

19   Court says, quote, "Common sense suggests that the ability to

20   recall a single-member district's representative should be

21   restricted to only those voters with the authority to vote in

22   the recall election itself."

23            And so I think there is some language in there

24   going both ways.

25            MR. HOFMEISTER:  There is some, Your Honor.  But I

1    think common sense also would dictate that a representative

2    from a single-member district should also easily be placed in

3    a situation where they are subject to a recall citywide

4    because the actions of any council member are going to impact

5    the city, the community, as a whole.  And I think a good

6    argument and a common sense argument can be made that a city

7    should be able to vote citywide on a recall of a -- even a

8    single-member district representative.

9            THE COURT:  All right.  Although I suppose that

10   logic would apply in the first instance then to electing that

11   member in the first instance.  And, of course, I think it was

12   1991 that the City amended its charter from what I suppose

13   before that was all at-large Council members to assist in

14   that.

15           MR. HOFMEISTER:  I believe that that's -- I believe

16   that that's right.  But one of the cases that we cited, and I

17   don't have it in front of me at the moment, that talks about

18   how the -- I'm trying to remember -- might be the *Smith* case

19   talks about how the -- when we're talking about recall, that

20   we're really looking at the election process in the

21   beginning, and not -- the act that applies to the election at

22   the beginning, and not to the recall process.  And for that

23   reason, again, another Fifth Circuit court we cited both in

24   our --

25           THE COURT:  That's *Smith v. Winter?*

1          MR. HOFMEISTER:  -- our motion -- yes.  *Smith v.*

2    *Winter*, correct.  Correct.

3          THE COURT:  All right.  I don't know if you have

4    other precedent that you wanted to cite today.

5          MR. HOFMEISTER:  Thank you.  At this time, we do

6    not, but we would be more than happy -- if the Court would

7    like for us to look and present the Court with any additional

8    authority, we would be happy to do that.

9          THE COURT:  All right.  We may do that.  I'll let

10   you-all make your arguments today, and we may very well do

11   that.  And I'll let you proceed with your argument.  I didn't

12   know if you had additional points to make before we hear from

13   the plaintiff.  And you'll have an opportunity, by the way,

14   to give some rebuttal arguments.  So --

15         MR. HOFMEISTER:  Okay.

16         THE COURT:  -- whenever you're concluded with your

17   sort of opening --

18         MR. HOFMEISTER:  Actually, Judge, I mean, that

19   concludes my comments on the matter.  We, of course, filed a

20   motion to dismiss.  We're asking the Court to dismiss all

21   claims on behalf of the plaintiffs in this case.

22         THE COURT:  I do have another question for you --

23         MR. HOFMEISTER:  Yes.

24         THE COURT:  -- right now, as long as you're up.  It

25   seemed to me that at the end of your motion, in the last few

1    pages of your motion, you addressed I think the *Gingles*

2    factors, or I think you -- at least you raised them, I think.

3    It seemed to me that that was a second alternative argument

4    you were making that the plaintiffs don't satisfy or haven't

5    pled -- adequately pled the *Gingles* factors, but I want to

6    make sure I was reading that correctly.

7            Most of your motion to dismiss has to do with the

8    Voting Rights Act not applying, and your arguments concerning

9    *Monell*, but I thought I understood the last few pages of your

10   motion to address the plaintiffs' pleadings with regard

11   to *Gingles*.  Am I correct?

12           MR. HOFMEISTER:  I think that what you are

13   referring to is the argument that we made in the motion to

14   dismiss when the injunctive relief -- the request for

15   injunctive relief was still pending.  And the argument there

16   was that they could not meet the *Gingles* factors, as you've

17   referenced them, because they would not -- there was not a

18   substantial likelihood that they would prevail on the merits,

19   one of the four elements required, because the courts have

20   held that there's no cause of action under the Voting Rights

21   Act.

22           THE COURT:  And that, would those -- but those

23   factors, in other words, those are also part of the pleading

24   requirements in a case like this.

25           MR. HOFMEISTER:  Absolutely.  Absolutely.

1      THE COURT:  All right.  And do you have any further

2   comment to make on that issue?

3      MR. HOFMEISTER:  I do not.  Not at this time, Your

4   Honor.

5      THE COURT:  All right.  Then thank you,

6   Mr. Hofmeister.  We'll hear from --

7      MR. HOFMEISTER:  Thank you, Judge.

8      THE COURT:  -- plaintiffs, I suppose it will be

9   Mr. Elahi, on their response to the motion.

10      MR. ELAHI:  Yes, Your Honor.  Thank you, Your

11   Honor.  And thank you for allowing us to appear by Zoom.  We

12   appreciate it.  Your Honor, I'm going to get closer so you

13   can hear me better.  Is this better, Your Honor?

14      THE COURT:  Yes.  And you might -- so our court

15   reporter can take down what you're saying, which is going to

16   be important, you may want to try to speak slowly.  And I'll

17   warn you in advance that either myself or my court reporter

18   might interrupt you because she may know that she's not

19   getting it and can't hear you well enough.  So bear with us.

20   If we stop you and have you repeat something, we want to make

21   sure the record is clear.

22      MR. ELAHI:  Of course, Your Honor.

23      THE COURT:  You can proceed.

24      MR. ELAHI:  Your Honor, let me ask if you would

25   mind if I just turn the video off because I feel like I'm too

1    close to the computer.  I'm -- I won't be able to read my

2    notes.  Is that okay?  Or do you wish me to stay on the video

3    as well?

4              THE COURT:  No, that's fine.  You can turn the

5    video off at least for this purpose.

6              MR. ELAHI:  Thank you, sir.  I appreciate that.

7              Your Honor, good morning.  I'm here on behalf of

8    the three plaintiffs in this case, Your Honor, Council Member

9    Shemwell, Florine Henry, and Debra Fuller.

10             Your Honor, this case, at this point, is not just

11   about Council Member Shemwell, it is about the voters of

12   District 1.  I believe most of the argument we heard from the

13   City revolved around Council Member Shemwell and his

14   situation as being at the other end of the recall election.

15   Whereas, Your Honor, our provision is that we are in front of

16   your court today to seek a resolution to what we believe is

17   an act of voter dilution and a violation of voter

18   protection -- I'm sorry, of Voting Rights Act.

19             I believe, Your Honor -- we believe that, yes, as

20   the other side conceded, there is no other precedence here in

21   Texas.  Your Honor, I wasn't able to find anything outside

22   Texas, at least in the search I did, for the response to my

23   motion.  But if Your Honor would allow both sides -- because

24   I know the other side is seeking it as well -- more time to

25   brief the Court, Your Honor, we would like the same

1    opportunity, of course, Your Honor.

2            But we have come to your court seeking a resolution

3    to what we believe remains an un -- let me rephrase that --

4    an issue that has not been raised in Texas yet, Your Honor,

5    in this fashion.  And we believe McKinney -- McKinney's

6    actions -- City of McKinney's actions have made them opened

7    to such a challenge, which we believe we have brought to your

8    attention.

9            And, Your Honor, we seek a remedy in your court to

10   basically tell the City of McKinney that, yes, you can have a

11   City -- you can have a charter amendment.  Yes, you can do

12   that.  And, yes, you can try to recall people who are sitting

13   on the Council; there is nothing wrong with that.  But what

14   you cannot do is hide behind a citizen-initiated petition and

15   use the City Council as a tool to basically push your agenda

16   against a specific person who is -- has been elected by a

17   specific district.

18           And why can they not do that, Your Honor?  Because

19   there is a reason why you went to single-member districts.

20   Your Honor, you, yourself, noted that City of McKinney, I

21   believe you said 1991 is when they formed the districts and

22   allowed people to elect their own, you know, neighbors and

23   people they knew from their own districts to represent them.

24   And kudos to City of McKinney because, Your Honor, they did

25   not require a lawsuit to do that, which a lot of cities were

1    forced to do by different people over the years after the

2    Voter's Right -- Voting Rights Act.

3           So City of McKinney decided itself that it was

4    going to move away from a citywide model and into a district

5    model or a single-member district model to make sure that

6    people are represented.  And, Your Honor, what they did, when

7    they basically allowed -- when they amended the charter and

8    they allowed a single-member district representative to be

9    taken out, to be recalled by the whole City, not in the

10   petition -- anyone can sign the petition, we concede that --

11   but what we're saying is that only a single-member district

12   voter can vote his or her representative out.  And that's

13   why, Your Honor, it's so important to focus that we have

14   three plaintiffs here and not just Council Member Shemwell.

15          Your Honor, I don't think anyone in this courtroom

16   is naive enough to think that political animus and things

17   like that do not work in both directions.  Obviously, these

18   are -- you know, that's what politics is.  We understand

19   that.  But what we cannot do, Your Honor, is to use the City

20   Council as a political tool to basically violate

21   constitutional rights to get your political goals and your

22   political opponents out of office.

23          Why would we say that, Your Honor?  Because we

24   believe that there is a nexus that we can basically prove if

25   we are allowed to go forth in this lawsuit, Your Honor.  We

1   believe the City Council was working as a unison, as one

2   body, to basically -- towards the goal of getting

3   Mr. Shemwell out.

4            Your Honor, I have noted in my response to the

5   motion to dismiss that we have a video of Mr. Fuller, Mayor

6   Fuller, actually having people over his house, paying them

7   for getting the petition signed.  Your Honor, we have many

8   posts by other City Council members and Mayor Fuller -- and

9   it's not personal, we're just telling you what evidence we

10  have at this point without even going into discovery --

11  basically promoting this petition in his official capacity,

12  not as an individual citizen which I believe he has a right

13  to do.

14           Your Honor, the focus, I believe, when the City

15  says we cannot plead and prove, Your Honor, we have pled and,

16  given a chance, we can prove that there is a nexus, there is

17  causation, Your Honor, and that the City was a moving force

18  behind what ended up happening in McKinney as far as the

19  petition is concerned.

20           But, Your Honor, even if we were to set that aside,

21  let's say we -- let's say arguendo we concede the point that

22  the petition was citizen initiated.  The question still

23  stands whether the goal of the petition, which allowed the

24  whole City to vote out, potentially vote out, a district --

25  single-district representative, is on its own face

1    constitutional.

2             And I believe, Your Honor, this may be a case of

3    first impression, as far as I can see, in Texas where, Your

4    Honor, your court and Your Honor is -- basically has to

5    decide whether, one, whether this case should go forward,

6    given what we know at this point, and allow discovery so we

7    can provide Your Honor with more information to make a

8    judgment on this case, on the Section 2 issue, as well as a

9    1983 causation issue, the moving force issue; and, Your

10   Honor, that you would be the one deciding one way or another

11   whether what the City did was constitutional.

12            As far as injury is concerned, Your Honor, the

13   injury is already there.  The injury is about to happen on

14   November 3rd, as far as we're concerned.  Yes, we're not

15   seeking injunctive relief because, Your Honor, it's just not

16   practical.  And I believe the first time we came in front of

17   you, we went over the *Gingles* analysis.  And I believe at the

18   end of it, I took my injunctive relief -- injunctive relief

19   request back because I couldn't make that argument, and I

20   think I'm in the same position.

21            Also, Your Honor, obviously given COVID and given

22   everything that's happened, you know, it's better to let the

23   election just happen instead of having more problem.

24            But regardless, Your Honor, going back to my

25   argument, what I'm trying to say is the injury's already

1    happened, because on November 3rd Mr. Shemwell will go in

2    front of the whole city to be recalled, and we believe that's

3    a constitutional violation.  And if Your Honor was to find

4    that at a later date, it won't obviously rectify what happens

5    on November 3rd, but at the same time, Your Honor, going

6    forward, I believe we can save other constitutional

7    violations from occurring.

8            So I believe, Your Honor, I'm not going to -- I

9    believe I'm completely in sync with, Your Honor, the analysis

10   of *McBride,* because I believe that's what we argued in our

11   response as well, Your Honor, so I'm not going to belabor the

12   point and waste your time.

13           Your Honor, we believe that basically at this

14   point, if you would allow us to go forth with discovery, we

15   can prove that not only was this not, um, a solely a

16   citizen-initiated petition, that there was the City Council

17   was the moving force behind it.  We can also, Your Honor,

18   prove that basically Section 2 was violated.  And that, Your

19   Honor, should find that going forward, district --

20   single-district members should only be recalled by their own

21   voters, even if the petition is citywide.  Thank you, Your

22   Honor.

23           THE COURT:  Mr. Elahi, I have just a few questions

24   for you.  But we'll hear from Mr. Hofmeister if he would like

25   to add anything.  A couple of them are -- just have to do

1    with recall procedure itself, so -- and we may hear from

2    Mr. Hofmeister again on this.  So can you remind me, you

3    know, per the City's charter, what are the grounds for

4    recall?  Is it something like incompetence or corruption?  Or

5    are you aware of the specific language that's provided in the

6    City's charter for what the grounds are for recall?

7             MR. ELAHI:  Your Honor, I do not have it in front

8    of me.  If my co-counsel does, I would appreciate it if he

9    would chime in, Your Honor.  But I believe it wasn't

10   corruption, it wasn't any of that.  It was basically to bring

11   the City in ill repute by asking -- there were a few things,

12   but basically using his First Amendment right, he apparently

13   called for -- Mr. Shemwell, not the other plaintiffs, called

14   for black state of emergency to be as a resolution passed by

15   the City Council.  So things of that nature.  But he has

16   never been charged with corruption or anything of that sort,

17   nor was it brought up.

18            Do you have that, by any chance?  Your Honor, I'm

19   asking my co-counsel.

20            THE COURT:  Yes, and to be clear for both of you,

21   my question is not specific to Mr. Shemwell, it's -- it is a

22   general question about what the City's charter provides as

23   far as any City Council member, you know, being recalled,

24   does the charter speak to what the grounds would be.

25            MR. ELMAZI:  Your Honor, I don't have the exact

1   language, but I believe it was something to the effect that

2   you can be recalled for incompetence, malfeasance, or

3   misconduct, broadly speaking.

4          THE COURT:  And I see Mr. Hofmeister is standing.

5   So you may have the exact language in the charter provision.

6   If you do, that would be helpful.

7          MR. HOFMEISTER:  If I may, Your Honor.

8          THE COURT:  Yes.

9          MR. HOFMEISTER:  I think that the City charter at

10  Section 144 addresses recall and the procedure.  And if I may

11  read that into the record.

12         THE COURT:  Yes.

13         MR. HOFMEISTER:  It's a paragraph, but it states

14  that, *Any five voters of the City of McKinney may make and*

15  *file with the City Secretary an affidavit containing the*

16  *names or names of the officers whose removal is sought and a*

17  *statement of the grounds for removal.  The City Secretary*

18  *shall thereupon deliver to the five voters making such*

19  *affidavit copies of petition blanks demanding such removal.*

20         I'm sorry -- *the City Secretary shall keep* -- let

21  me read this.  *The City Secretary shall keep a sufficient*

22  *number of such printed petition blanks on hand for*

23  *distribution.  Such blanks, when issued by the City*

24  *Secretary, shall bear the signature of that officer and be*

25  *addressed to the City Council and shall be numbered, dated,*

1     *and indicate the names of the voters to whom issued.*

2            *The petition blanks, when issued, shall also*

3     *indicate the number -- the number of such blanks issued and*

4     *the name of the officer whose removal is sought.  The City's*

5     *Secretary shall enter in a record to be kept in their office*

6     *the name of the electorate to whom the petition blanks were*

7     *issued and the number issued to said voters.*

8            So Section 144 does not set out a list of grounds

9     upon which a Council member might be recalled, it just says

10    that the papers will be filed and a statement of the grounds

11    for removal will be provided.

12           THE COURT:  So the charter doesn't provide any

13    standards for the voters in regard to what are the grounds

14    for recall, it's essentially left entirely up to the voters

15    if this is initiated by the voters; is that correct?

16           MR. HOFMEISTER:  That is my understanding, Your

17    Honor.  All right.  Here's a --

18           THE COURTROOM DEPUTY:  It looks like we lost

19    Mr. Elahi --

20           THE COURT:  Oh, we lost -- I think we did lose

21    Mr. Elahi.  And I was just about to go to my --

22           MR. ELAHI:  No, Your Honor.  I'm here.

23           THE COURT:  Oh, good.  All right.  We have a video

24    screen up where we see everybody's name, and if we have video

25    for them.  And we have your co-counsel, Mr. Elmazi.  We don't

1   see you.  But if you're on at least by audio, that will be

2   sufficient.  Oh --

3            MR. ELAHI:  Yes, Your Honor.  I'm here.

4            THE COURT:  All right.  Well, it's timely because

5   the second question I have, and this again is a general

6   question on procedure regarding recall, is presuming that

7   Mr. Shemwell is -- the result of the election is that he is

8   recalled, what is the procedure at that point with regard to

9   having a new Council member for District 1?  And it would be

10  helpful to know what the procedure is.  Is there a new vote

11  among members of District 1 for a new Council member?  Or

12  what is the process for replacing someone in Mr. Shemwell's

13  position if they are voted out by recall?

14           MR. HOFMEISTER:  Your Honor?

15           THE COURT:  Yes, Mr. Hofmeister, you can answer

16  that.

17           MR. HOFMEISTER:  Thank you, Your Honor.  Again,

18  looking at the City charter for the City of McKinney, at

19  Section 148, Results of the Recall Election -- and I'm going

20  to read this in full -- *If a majority of the votes cast at a*

21  *recall election shall be against the recall of the officer*

22  *named on the ballot, he shall continue in office for the*

23  *remainder of their unexpired term subject to recall as*

24  *before*.

25               *If a majority of the votes cast at such election*

1    *shall be for the recall of the officer named on the ballot,*

2    *he shall, regardless of any technical defects in the recall*

3    *petition, be deemed removed from office and the vacancy shall*

4    *be filled by state law.*

5           THE COURT:  And do we know -- as you stand here

6    today, Mr. Hofmeister, do you know how that -- what state law

7    would call for in terms of next steps to fill that Council

8    position?

9           MR. HOFMEISTER:  Your Honor, I believe that if the

10   recall election results in Mr. Shemwell -- Council Member

11   Shemwell being removed from office, as the charter indicates,

12   that at that time -- excuse me one second --

13           (Counsel confer.)

14           MR. HOFMEISTER:  -- that according to the charter,

15   he shall be deemed removed from office and the vacancy shall

16   be filled by state law.  At that point, I believe it is the

17   Council's prerogative, they have the authority, to appoint

18   someone to fill the vacant seat for the unexpired term, which

19   would mean that they could act, because -- and again in this

20   scenario, this hypothetical, assuming that Mr. Shemwell is

21   removed from office, deemed removed from office, then the

22   Council could act at any time thereafter to fill that vacancy

23   for the unexpired term.

24           THE COURT:  And then in this case, I suppose the

25   unexpired term would go until May of 2021.

1          MR. HOFMEISTER:  Correct.

2          THE COURT:  And at that point there would be

3    another election where just the voters of District 1 would

4    vote in whoever would take up that position starting in

5    May 2021; is that correct?

6          MR. HOFMEISTER:  That is my understanding.  Yes,

7    Your Honor.

8          THE COURT:  And are you -- I know I'm putting you a

9    bit on the spot here.  Are you aware of the state law that

10   directs that the Council would be permitted to appoint

11   somebody for that unexpired term?  Is that part of the

12   elections code or --

13         MR. HOFMEISTER:  I believe it is.  I can't point

14   the Court to a section at this point.  I'm trying to think if

15   maybe that's actually a constitutional provision under

16   Article 11, but I'm not sure.

17         THE COURT:  All right.  And another question along

18   these same lines is how often can a Council member be subject

19   to these types of recall petitions?  Meaning, you know, if

20   you suppose that one is initiated, it gets on a ballot and it

21   fails, how soon could another one be initiated against the

22   same Council member?

23         MR. HOFMEISTER:  May I read from the charter again,

24   Your Honor?

25         THE COURT:  Yes, certainly.

1          MR. HOFMEISTER:  Yes.  Section 149.  We're going in

2     order here.  Limitations on Recalls.  *No recall petition*

3     *shall be filed against the mayor or a Council member within*

4     *four months after he takes office, nor in respect to the*

5     *mayor or any Council member subject of a recall election and*

6     *not removed thereby until at least six months after such*

7     *election*.

8          THE COURT:  So hypothetically -- this is for you,

9     Mr. Hofmeister -- if someone was elected, let's say you have

10    a Council member was elected in this election that's in

11    another single-member district; and two months later, there's

12    an initiative to get -- to have him recalled; and let's say

13    within the year, a recall election is made and that person is

14    recalled, and the vote is against them and they're recalled;

15    then the City Council would be able to appoint somebody for

16    the remainder of -- is it a four-year term, or how many

17    years' term?

18         MR. HOFMEISTER:  I believe it's a four-year term.

19         THE COURT:  So the City Council in my hypothetical

20    would be able to appoint somebody to fill out the remainder

21    of that three-year term; is that accurate?

22         MR. HOFMEISTER:  I think that that's correct, Your

23    Honor.

24         MR. ELMAZI:  Your Honor, may I provide some clarity

25    about that?

1          THE COURT:  Yes.

2          MR. ELMAZI:  It's my understanding that if the term

3    is less than one year until the Council person would be up

4    for reelection, then the Council or mayor would be able to

5    appoint someone; otherwise, a special election would need to

6    be called.

7          MR. HOFMEISTER:  I think that's correct.  I think

8    that is a correct statement of the law.  A year or less, then

9    the Council has the authority to appoint.

10          THE COURT:  All right.  And so if it was, if there

11   was more than a year remaining, then --

12          MR. HOFMEISTER:  A special election.

13          THE COURT:  -- a special election would need to be

14   called.  And that special election presumably would again be,

15   if it's a single-member district, the single-member district

16   voters selecting a new Council person.  Would that be

17   accurate?

18          MR. HOFMEISTER:  That is my understanding, Judge.

19          THE COURT:  Does that sound right to you,

20   Mr. Elmazi?

21          MR. ELMAZI:  Yes, sir, that's our understanding.

22          THE COURT:  All right.  And, Mr. Elahi, I have

23   one -- you can remain up there, Mr. Hofmeister, in case you

24   have some rebuttal.  But I have one or two more questions for

25   Mr. Elahi before we go back to you on your argument.

1          Mr. Elahi, you did -- you have talked a bit about

2     the argument that you made by about the City Council or

3     Council members being a moving force behind the recall, and I

4     just want to make sure I understand your argument.  It seems

5     to me that you understand the distinction between a Council

6     member acting in an official capacity versus a Council member

7     who is acting as an individual citizen of McKinney; correct?

8          MR. ELAHI:  Yes, Your Honor.

9          THE COURT:  And so, for example, a Council member

10    acting as an individual citizen, I take it, could sign a

11    recall petition, and you don't think that would be

12    problematic; is that right?

13         MR. ELAHI:  That's correct, your Honor.

14         THE COURT:  If all they did was sign the petition.

15         So if -- on the other side of the spectrum, you're

16    not alleging conduct in any directly official capacity,

17    meaning you're not alleging that the mayor or other City

18    Council members have taken actions in an official capacity to

19    move this recall, or are you making that allegation?

20         MR. ELAHI:  Your Honor, in order to clarify, I'm

21    basically putting on the record what we believe at this point

22    can establish that nexus.  And the feelings we have is Mayor

23    Fuller engaged in making sure that the petition numbers are

24    collected, which he may say he did that in his personal

25    capacity, but it remains to be seen.  We'll have to depose

1   him to see how he initiated or how he paid those people to

2   get the signatures.  So I think that needs to be looked into.

3           Secondly, Your Honor, we do believe he made social

4   media posts as the Mayor of McKinney encouraging the petition

5   or -- and/or supporting the petition, which we believe goes

6   to the other argument that there's he became the moving

7   force.

8           And, thirdly, Your Honor, we believe that the

9   conduct of the City Council members, which can be very easily

10   established or, rather, witnessed if we were to proceed, and

11   we can show the Court down the road in an evidentiary setting

12   perhaps, in a hearing, what was said from the podium -- now,

13   that could be privileged, that could be political speech --

14   but that clearly states that they were acting in unison

15   bashing Council Member Shemwell and making sure that the City

16   of McKinney knew that all the Council members in their

17   official capacity were behind the petition.

18           Now, that's arguable that they have complete

19   privilege to do that.  I don't know, Your Honor.  And that is

20   another thing we can look into.  But, Your Honor, I think

21   that does become secondary once you look into the fact of the

22   totality of circumstances that they went out of their way

23   to -- once they started bashing Council Member Shemwell on

24   the podium for what they thought his behavior was, Your

25   Honor, they changed the charter amendment, the recall -- I

1   apologize -- they changed the process of the recall to make

2   it easier -- less signatures, more time -- to make sure that

3   they could do what they wanted to do, Your Honor.

4          And, secondly, now they would say, well, citizens

5   voted on it.  Yeah, we understand that.  But, Your Honor,

6   when they looked at the recall charter, which was I believe

7   written in 1958, I believe, Your Honor, if I'm not mistaken,

8   that actual language that they changed, they left alone the

9   language that talked about citywide elections, not taking

10  into account that there were no single-member districts back

11  then.

12         So why would they overlook such a crucial thing if

13  their whole agenda was not to make it easier to recall

14  somebody they didn't like and, on top of that, to basically

15  not respect the constitutional changes that had taken place

16  in the country all over, Your Honor, to make our democracy a

17  better and better-functioning democracy?

18         So I believe, Your Honor, there is a lot to be

19  looked into.  Your Honor, last time they were blocking all

20  depositions.  They were saying, no, it's all privileged.

21  Your Honor, I believe if Mr. Shemwell is even set aside as a

22  plaintiff, the other two voters have the right to look into

23  why their vote was diluted by a Council that just didn't

24  happen to like one individual.

25         Nobody is saying they cannot have a recall.  Nobody

1    is saying they cannot, you know, go ahead and, as citizens,

2    say, hey we don't like Mr. Shemwell, or even the Council

3    members, perhaps, and say, okay, vote against him outside.

4    But, Your Honor, what happened -- by the way, Your Honor, I

5    would also point out that we also have evidence that

6    Mr. Fuller, George Fuller, the Mayor of McKinney, he has been

7    telling people that he would replace Mr. Shemwell with

8    another African-American.  I believe that's highly offensive

9    to all District 1 members of voters; they get to decide who

10   gets there.

11          But that is -- those are the kind of language

12   that's being used in this that leads us to believe that there

13   is an undercurrent of personal political animus that

14   motivated and became the moving force of the City to

15   completely violate the constitution to reach a political end.

16          And I believe, Your Honor, we are in front of you

17   to basically give you the information that we have, and

18   obviously the City will give theirs, to make a judgment on

19   that, Your Honor.  I believe, Your Honor, that we should be

20   allowed to do that by engaging in discovery, Your Honor, and

21   that's why we don't believe we should be dismissed today.

22          THE COURT:  Let me ask you one more hypothetical,

23   Mr. Elahi, which is hypothetically, you've already said that

24   you don't think there is a problem with members of the City

25   Council as individual -- acting as individual citizens with,

1    for example, signing a petition, a recall petition

2    initiative; correct?

3                MR. ELAHI:  Yes, Your Honor.  I believe that there

4    may be appearance of impropriety, but I don't think there is

5    anything illegal or anything wrong with that, no.

6                THE COURT:  And would you think it would be

7    problematic for, again hypothetically, for City Council

8    members speaking as citizens, to speak in favor of a recall

9    petition?

10               MR. ELAHI:  Yes, Your Honor, they have a First

11   Amendment right.

12               THE COURT:  All right.  So I take it that in this

13   case you're saying that you believe there is evidence that

14   the actions of other City Council members went beyond those

15   kinds of actions in such a manner as to rise to the City

16   Council or -- acting in unison or in some sort of official

17   capacity against this Mr. Shemwell.

18               MR. ELAHI:  Yes, Your Honor.

19               THE COURT:  All right.  All right.  That's all the

20   questions I had for you, at least at this time, Mr. Elahi.

21               Mr. Hofmeister, do you have any rebuttal argument

22   you would like to make?

23               MR. HOFMEISTER:  If I may, Your Honor.

24               THE COURT:  Yes.

25               MR. HOFMEISTER:  I would like to clarify one thing

1    that we talked about earlier, and that was on what happens if

2    Mr. Shemwell's recalled and we have a situation where less

3    than one year of the term remains, and I believe that that is

4    under the Texas constitution, I believe it's Article 11,

5    Section 5, if I'm not mistaken.  But in that instance, the

6    City Council has the authority to appoint someone to fill

7    that vacancy, but they do not necessarily have to do that.

8    They have the -- they have the authority, the option, to not

9    fill it and to let it go until the next election.

10                  THE COURT:  If it is within one year.

11                  MR. HOFMEISTER:  If it is within one year.

12                  THE COURT:  And then if it is more than one year,

13   are they obligated, I take it, to call a special election?

14   Is that --

15                  MR. HOFMEISTER:  I believe that that's the case,

16   yes.

17                  THE COURT:  All right.

18                  MR. HOFMEISTER:  Let me see here.

19                  THE COURT:  And is that, that requirement of

20   calling a special election, is that another -- is that a

21   State Elections Code provision, constitutional provision?  Or

22   are you aware one way or the other?

23                  MR. HOFMEISTER:  Constitutional?  Yeah,

24   constitutional.

25                  THE COURT:  All right.

1          MR. HOFMEISTER:  One other thing, too.  Mr. Elahi

2     mentioned about, in the first case, that we somehow wouldn't

3     allow depositions or discovery to be taken, and I would just

4     simply say that the City was never noticed to have any

5     depositions of any of its officials taken, so we never

6     blocked any attempts to discovery or anything by the

7     plaintiffs -- or the plaintiff in that case.

8          The other thing I want to address specifically is

9     the what we're hearing today for the first time, frankly,

10    concerning the mayor, other Council members, that sort of

11    thing.  We're here on a motion to dismiss, so the focus has

12    to be the face -- what appears on the face of the pleading,

13    on the complaint itself.  And there is nothing in there about

14    the activities -- certainly, what they're referring to

15    concerning a video and this piece of evidence.

16          But I would like to at least get into the record

17    what we stated in our reply, pardon me, concerning this

18    so-called piece of evidence -- this so-called video piece of

19    evidence.  And that is to support their claim, plaintiffs

20    point to a single piece of evidence, quote, unquote,

21    "Allegedly reflecting actions of the mayor that are not

22    alleged in the complaint; that are not alleged to be

23    unlawful; that plaintiffs admit fall within the mayor's

24    rights as an individual citizen; that are not alleged to be

25    tied in any way to an official policy, practice, custom, or

1    usage of the City; and that are not tied to the action of any

2    other member of the City's policy-making governing body, the

3    McKinney City Council.

4            "Plaintiffs have failed to articulate or identify

5    and, therefore, have failed to plead, a causal connection

6    between the City's policy maker, the City Council, and the

7    injury allegedly sustained by them, which was the result of a

8    citizen-driven recall petition submitted to the City that set

9    into motion the recall process provided under McKinney City

10   Charter."

11           They cite absolutely no case law or other

12   authority, none, for the position they take concerning any

13   alleged wrongdoing by the City, or City liability, under

14   Section 1983.  And I believe that that remains unchanged as

15   of this morning.

16           So what we're looking at, under Section 1983 again,

17   is some sort of a policy statement by the Council.  And while

18   you may have individual Council members, including the mayor,

19   out there expressing their First Amendment right, freedom of

20   speech, to support or not support someone in a political

21   position, there is no nexus, there is no causal connection

22   between such actions, such individual actions and any sort of

23   action, official action, taken or implemented by the

24   governing body, the City Council itself.

25           THE COURT:  Can I ask you a hypothetical along

1    those lines, Mr. Hofmeister, which is right now we're in the

2    situation where at this point in time we're talking about

3    just the petition procedures and that Mr. Shemwell's

4    articulation of an injury would fall within *McBride*, meaning

5    that, you know, at least *McBride* principle, that these

6    petitions are not subject to the Voting Rights Act.

7              So let's say we take this after the vote.  After

8    the vote, if the vote is taken and if Mr. Shemwell is voted

9    out, at that point if he's trying to articulate an injury and

10   saying I am injured by a City provision, I'm injured by the

11   charter amendment that says the entire City is voting on this

12   rather than just my district, is he -- does he then -- are we

13   then back to where the law is unsettled?  Or do you think

14   that that's still -- there is still not an articulation of

15   something that would fall within their 1983 claims, as you

16   see it?

17             MR. HOFMEISTER:  I think there's still no colorable

18   cause of action that can be brought by Mr. Shemwell, even at

19   that point, under Section 1983.  It is the result of an

20   election that the City Council -- that the City was required

21   to put before the voters.  The City itself had nothing to do

22   with the results of an election.  The City cannot cast a vote

23   in the election; and, therefore, there is no direct causal

24   connection.  It is cut between the injury allegedly visited

25   upon the plaintiffs and the City.  And that goes back again

1    through *Monell* and its progeny to the present day.

2              THE COURT:  All right.  Thank you.  Do you have any

3    other remarks today, Mr. Hofmeister?

4              MR. HOFMEISTER:  Not unless the Court has any other

5    questions for me.

6              THE COURT:  No, I don't.

7              MR. HOFMEISTER:  Thank you, Your Honor.  Appreciate

8    your time this morning.

9              THE COURT:  All right.  Thank you, Mr. Hofmeister.

10             Mr. Elahi, anything further from the plaintiffs

11   this morning?

12             MR. ELAHI:  Your Honor, nothing.  I'm not going to

13   rebut what Mr. Hofmeister said.  I just want to point out,

14   Your Honor, I was -- we were talking about the standard for

15   removing a municipal officer earlier, Your Honor.  So I

16   looked up the local government code, Title 2, Chapter 21.

17   And, Your Honor, under 21.025, it reads General Grounds for a

18   Removal.  *A, An officer may be removed from office for, one,*

19   *incompetency; two, official misconduct or intoxication on or*

20   *off duty caused by drinking an alcoholic beverage.*

21             And, Your Honor, I believe that that does apply to

22   the municipality as well, at least incompetency, and official

23   misconduct definitely does.  It's Chapter 21.  And if I'm

24   misreading it, Your Honor, I apologize, but I believe it

25   applies to the general law of a municipality.  And, Your

1    Honor, I believe that's the standard for the removal.  And

2    why McKinney doesn't have that standard, I don't know.  But

3    even if they haven't articulated one, I assume that they

4    would have to follow this one as this is a state law, Your

5    Honor.

6              THE COURT:  Well, I think Mr. Hofmeister can

7    address that and is about to.

8              MR. HOFMEISTER:  Yes, Your Honor.  Thank you.

9              As Mr. Elahi indicates, that provision relates

10   specifically to general law cities, not to home rule cities.

11             THE COURT:  Right.  And I was going to say this is

12   a home rule municipality; right?

13             MR. HOFMEISTER:  Absolutely.

14             MR. ELAHI:  Well, I -- I apologize.  Then I take my

15   argument back, and I apologize.

16             MR. HOFMEISTER:  No, that's quite all right.  But

17   state law mandates that the charter provision controls.  And

18   so that's what we look to, and that's what we read into the

19   record earlier.

20             THE COURT:  Right.  That's my understanding, it's a

21   home rule municipality that, therefore, the City is going to

22   determine what the grounds are going to be for this type of a

23   recall situation.

24             MR. HOFMEISTER:  Correct.  With whatever clarity or

25   however broad-sweeping they want it to be, that's the

1    language that's adopted and that is contained in the charter

2    itself.

3              THE COURT:  All right.

4              MR. ELAHI:  Your Honor, as long as it's not

5    unconstitutional, I think the City would agree that even if

6    it's broad, it still would have to be within the boundaries

7    of the constitutional expectations, Your Honor.

8              MR. HOFMEISTER:  The City agrees that the charter

9    cannot contravene state law or the constitution, so but we

10   don't think there is any problem in this case in that regard,

11   and that's what we have pled in our motion to dismiss,

12   effectively.

13             THE COURT:  Right.  I haven't heard -- I certainly

14   haven't heard any argument that the mere fact that the City

15   has not set a standard, if you will, for what voters should

16   be looking to in initiating this kind of recall petition,

17   that that in and of itself standing alone would present a

18   violation of certainly a federal law or the federal

19   constitution.  I haven't seen that argument.

20             MR. HOFMEISTER:  I don't believe it's there, Your

21   Honor.  I don't think it's been made.

22             THE COURT:  All right.  I'll tell you what.  I'm

23   going to take this under advisement right now.  One,

24   something that's come up a few times in our discussion today,

25   is whether or not it would be helpful to submit an additional

1    supplemental brief for both sides.  Is that something that

2    plaintiffs and/or defendants would like to do?

3              We'll hear from Mr. Elahi.

4              MR. ELAHI:  Yes, Your Honor.  I do believe that

5    would be helpful, Your Honor.

6              THE COURT:  All right.  Mr. Hofmeister?

7              MR. HOFMEISTER:  Yes, Your Honor.  As the Court

8    knows, we filed a motion to dismiss.  We got the response

9    from the plaintiffs.  We have filed a reply.  So I think all

10   things being equal, it's -- you know, taking it in order,

11   it's time for the plaintiffs to submit any sort of pleading

12   that they want in the way of a sur-reply.  And if we could

13   have the opportunity to respond or reply to that sur-reply,

14   we would request that.

15             THE COURT:  Yeah, I think that makes sense.

16             So, Mr. Elahi, will it work for you and your

17   co-counsel to submit a sur-reply within a week, a week from

18   now?  And I would like to have this, both follow-on briefs,

19   to be limited to no more than ten pages.  And don't even feel

20   like you need to get it to ten pages, but just limit it to

21   ten pages.

22             Would a week work for you, Mr. Elahi?

23             MR. ELAHI:  Your Honor, may I request until next

24   Friday?  I'm looking at the date, Your Honor.  I'm --

25             THE COURT:  That's fine.

1              MR. ELAHI:  Next Friday would be --

2              THE COURT:  The 30th, I believe?

3              MR. ELAHI:  Yes, Your Honor.  Would that be okay

4      with the Court?

5              THE COURT:  Yes, that's fine.  So we could do an

6      order today that your sur-reply will be due the 30th.

7              And then you can, Mr. Hofmeister, the City can do a

8      response to the sur-reply a week later, which I believe is

9      going to be around March 7th, roughly --

10             MR. HOFMEISTER:  Probably the 6th, I think.

11             THE COURT:  -- the 6th or 7th.  Right.  It will be

12     the following Friday.  It will just be set a week later.

13     Does that work for the City?

14             MR. HOFMEISTER:  That works for the City, Your

15     Honor.

16             THE COURT:  All right.  And these can be -- it will

17     be helpful to the Court if, even if it's briefly addressed,

18     some of the things that we were talking about today, just so

19     I know exactly the law that's applicable on some of these

20     what I would refer to them as procedural aspects and the law

21     that's governing with regard to recall elections, and then

22     anything else that you need to add that you think bears on

23     the issues that we've discussed today, and particularly the

24     questions I had for you, and the authorities you've relied

25     upon and other authorities that may be out there on these

1    issues.

2              All right.  Thank you, counsel.  We will stand in

3    recess on this case.

4              MR. HOFMEISTER:  Thank you, Your Honor.

5              MR. ELAHI:  Thank you, Your Honor.

6              THE COURT SECURITY OFFICER:  All rise.

7                      (Adjourned at 10:47 a.m.)

8                       *    *    *    *    *

9

10                   CERTIFICATE OF OFFICIAL REPORTER

11

12            I, Gayle Wear, Federal Official Court Reporter, in

13   and for the United States District Court for the Eastern

14   District of Texas, do hereby certify that pursuant to Section

15   753, Title 28 United States Code, that the foregoing is a

16   true and correct transcript of the stenographically reported

17   proceedings held in the above-entitled matter and that the

18   transcript page format is in conformance with the regulations

19   of the Judicial Conference of the United States.

20

21                   Dated 16th day of December 2021.

22

23                   /s/ Gayle Wear
                     GAYLE WEAR, RPR, CRR
24                   FEDERAL OFFICIAL COURT REPORTER

25